14 WISCONSIN REPORTS.

Attorney-General ex. rel. Brayton and Waldo vs. Merriman.

# THE STATE ex rel. JAMES C. BRAYTON and ALONZO H. WALDO,

*vs.*

# ORLANDO C. MERRIMAN.

### INFORMATION IN THE NATURE OF A QUO WARRANTO.

The provision in the Constitution of this State—that " no county with an area of nine hundred square miles or less, shall be divided or have any part stricken therefrom, without submitting the question to a vote of the people," &c., is not merely directory to the legislature; it is inhibitory and imperative.

The act of the legislature, approved March 20th, 1857, (*Session Laws of* 1856, *Chapter* 27,) which provides for detaching certain territory therein described from the county of Dodge, and attaching the same to the county of Jefferson, unconstitutional and void, in case Dodge county contained an area of not more than 900 square miles.

The original surveys made by the United States government are not to be taken as conclusive presumptions of law; they may be rebutted and impeached as to their correctness; but, *prima facie,* they are to be presumed to be correct until their accuracy has been properly impeached.

*Semble.* The accuracy of the government surveys may be put in issue by the pleadings, and be determined like other questions of fact.

*Wm. R. Smith,* attorney-general, and *E. G. Ryan* for the relators.

*O. C. Merriman,* in person, respondent.

*By the Court,* COLE, J. This was an information in the nature of a *quo warranto,* filed by the Attorney-General, upon the relation of James C. Brayton and Alonzo H. Waldo, citizens of the county of Jefferson, to inquire by what right the respondent uses and exercises the office of clerk of the board of supervisors of said county. The respondent in his plea to the information, substantially alleges that prior to the

20th day of March, 1856, the county of Jefferson was divided into, and composed of, the towns of Aztalan, Cold Spring, Concord, Farmington, Hebron, Ironia, Jefferson, Koshkoming, Lake Mills, Milford, Oakland, Palmyra, Sullivan Waterloo and Watertown, and the first, second, third and fourth wards of the city of Watertown; that by an act of the legislature approved March 20th, 1856, among other things it was enacted that all that district of country lying and being in the county of Dodge, and known and described as townships number nine north of ranges thirteen, fourteen, fifteen, sixteen, and seventeen, east, and comprising the towns of Portland, Shields, Emmet, Lebanon and Ashippun, and the fifth and the sixth wards of the city of Watertown, should be attached and annexed to the county of Jefferson on and after the first Tuesday of July, 1856; that no application was ever made by the board of Supervisors of the county of Dodge to the Supreme Court for the appointment of commissioners to survey and measure the area of the county of Dodge, pursuant to the fifth section of said act of the legislature, and that no election was had or held, pursuant to the sixth section of said act. The respondent further avers and sets up, in his plea, that at the general election in November, 1856, the whole number of votes cast for the clerk of the board of supervisors for the county of Jefferson in the district of country, or towns and wards comprising the county of Jefferson before the annexation of a portion of Dodge county, was five thousand two hundred and ten; of which two thousand five hundred and four were cast for the respondent for the office, and two thousand and seven hundred and six were cast for one Martin Stenffer, and that the whole number of votes cast for the office in that portion of the county of Dodge annexed by said act to the county of Jefferson, was one thousand five hundred and twenty three, whereof one thousand and sixteen were cast and given for the respondent, and five hundred and seven for said Stenffer; and further, that respondent was a resident of the town of Jefferson in Jefferson county for upwards of six months prior to the election in 1856, was duly qualified to

hold the office, and was in manner and form aforesaid, and by the votes aforesaid, duly elected thereto, and that he has qualified, and entered upon the discharge of the duties of the same as of right he might lawfully do. To this plea a demurrer has been interposed, assigning for cause of demurrer, that the act of the legislature mentioned and set forth in the plea, is unconstitutional and void, and that the portion of the said county of Dodge attempted to be attached and annexed to the county of Jefferson by said act of the legislature was not, on the 4th day of November, 1856, within the county of Jefferson, or any part thereof.

It is therefore evident that the demurrer brings up directly for consideration the constitutional validity of the act in question; for if the plea be adjudged to be good, and the act sustained, the demurrer admits in law the right of the respondent to hold the office. It may contribute to a better understanding of the questions involved, to briefly state in this place the substance of the act, the validity of which has to be determined.

The first section of the act, (S. L. 1856, Ch. 27) provides that all of that district of country lying and being within the county of Dodge, and known and described as townships number nine, north of range number thirteen, fourteen, fifteen, sixteen and seventeen, east, and comprising the towns of Portland, Shields, Emmet, Lebanon and Ashippun, and the fifth and sixth wards of the city of Watertown, is thereby detached and set off from the county of Dodge and attached and annexed to the county of Jefferson. The next section provides that on and after the first Tuesday in July, 1856, the district of country thus detached from Dodge, shall be annexed and attached to, and form a part of the county of Jefferson, to all intents and for all purposes whatever. The third section provides that all suits and other legal proceedings commenced in any court in the county of Dodge prior to July, may be prosecuted to final judgment in that county, and executions issued thereon the same as though the act had not been passed. The fourth section provides that the board of supervisors of Jefferson county shall procure copies of so much of the records of Dodge county

as may relate to the title of any lands in the district thus attached, and prescribes the manner these records may be authenticated so as to become evidence in courts of justice. The fifth section provides, that on the application of the board of Supervisors of Dodge county, the Supreme court shall appoint three commissioners, practical surveyors, whose duty it should be to make an actual survey and admeasurement of Dodge county, compute the number of acres and fractions of acres therein, and to complete and file their admeasurement and survey on or before the first day of July, 1856, in the office of the Secretary of State; and if the county was found not to contain an area greater than nine hundred square miles, the act was not to take effect until a majority of the voters of the county should have voted in favor of the division, at an election which by the sixth section, the Secretary of State was directed to give notice of, and order, within the time, and in the manner therein specified. By the seventh section, if a majority of all the votes cast at such election should be for a division, the act was to take effect from and after the 15th of September following. The other portions of the act are not material. It will be seen that the pleadings admit that there have been no commissioners appointed to make a survey of Dodge county, and that the question of division has not been submitted to a vote of the people, so that the district of country detached from Dodge and annexed to Jefferson county, if attached at all and thus annexed, has been done by the aforesaid act of the legislature.

The provision of the constitution with which this act comes in apparent conflict is Sec. 7, Art. 13, and reads as follows:

"No county with an area of nine hundred square miles or less, shall be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question shall vote for the same.

Now it is to be observed that section 9, chapter 2, R. S., defines the boundaries of the county of Dodge, as

"Beginning at the south-east corner of township nine, north

18 · WISCONSIN REPORTS.

Attorney-General ex. rel. Brayton and Waldo vs. Merriman.

of range seventeen, east of the meridian aforesaid; running thence north on the range line between ranges seventeen and eighteen east, to the north-east corner of .township thirteen, north of range seventeen east; thence west on the line between townships thirteen and fourteen north, to the north-west corner of township thirteen, north of range thirteen east; thence south on the range line between ranges twelve and thirteen east, to the south-west corner of township nine, north of range thirteen east; thence east on the line between townships eight and nine north, to the place of beginning." Section 31 of the same chapter also further provides,

"Whenever in this chapter the boundary line of any county is described as running north and south on any range line, or east and west on any township line, the said boundary lines shall be deemed to run on such lines as established by the United States survey, making such offsets, when such range and township lines are not continuous straight lines, as are made by such United States surveys." It is further to be remarked that the acts of Congress relating to the survey of the public lands, (Act of May 28th, 1796, 1 U. S. Stat. at Large, 464; Act of March 26th, 1804, 2 Id., 277,) in substance provide that the lands shall be surveyed into townships of six miles square, unless the course of navigable rivers shall render it impracticable to run the division lines as prescribed in the acts. There are no navigable waters in Dodge county, and it will therefore be seen, that by the government surveys it must contain just nine hundred square miles; consisting, as it does, of twenty-five townships; and consequently would seem clearly to fall within the constitutional limitation which restrains the legislature from dividing by law, a county of that area, or from striking any portion therefrom, without first submitting the question of division to a direct vote of the people of such county, and unless a majority of the legal voters of the county voting upon the question should be in favor of the division. Nor can it be said that the provision of the constitution is only discretionary, and not imperative. For it must be apparent from the slightest examination of the clause, that it was

not designed to be, and in fact is not, in its nature merely directory—a provision which the legislature, in its exercise of legislative authority, may or may not regard, at its discretion. The language employed precludes any such idea, being, as it is, of the most explicit and imperative character, in effect, saying that a county of a given extent shall only be divided by a vote of the people, and absolutely and unqualifiedly restraining such a division by legislative enactment. The conclusion is natural, and would seem irresistible that a division of a county containing only nine hundred square miles or less, can under our constitution be effected by a popular vote alone. Legislative power to divide a county of that area is taken away by the express words of the fundamental law of the State.

It is probably unnecessary now to allude to the evils and mischief which this constitutional provision was intended to guard against and prevent. They will readily occur to one having the least experience in the history and legislation of our new States. The meaning of the provision being thus clear and free from all doubt, it becomes the duty of the court, however delicate that may be, in good faith to sustain and enforce it. Experience may demonstrate that the provision as it now stands, is not calculated to accomplish all the good, or prevent all the mischief the convention expected it would avoid or secure. It may perhaps be difficult to carry out in practice and lead to much confusion, when applied to a case like the one at bar. But with the practical inconvenience of the provision we have really nothing to do. It is obvious that by the constitution, a rightful exercise of legislative power in the division of counties is made to depend upon a given fact, that is, the area or superficial contents of the county to be divided. Ordinarily there will probably not be much difficulty in ascertaining the area of a county. But when a county is situated like that of Dodge, embracing just nine hundred square miles, by the government surveys, when estimated by township lines and when it is alleged on the one hand and on the other, that the real actual area of the county exceeds, or falls short of, the area thus made by these government surveys, how then is the

question as to the actual area to be determined and settled? For it is manifest that in this case the validity of the act of the legislature dividing Dodge county, depends entirely and solely upon the fact whether it contains more than nine hundred square miles or not. If it does, the act, to a certain extent, may be constitutional; if not, it clearly is unconstitutional and void.

The counsel for the relators contended that for the purpose of settling the question as to the area of a county, the townships of the United States surveys must, as a conclusion of law, be taken to be six miles square. That it is a conclusive presumption, not open to inquiry whether in fact the townships do contain more than thirty-six square miles or less. If that view of the matter be correct—and to say the least it is a very plausible view of the question—then as soon as the court finds that Dodge county contains no more that twenty-five townships, it must declare the act of the legislature dividing it, unconstitutional, and all further inquiry ends. We have not been able, however, entirely to concur in this construction of the clause of the constitution. At the same time we are clearly of opinion that it would have been far better if the constitutional provision had further declared that for the purpose of determining the area of a county, and the power of the legislature to divide it, the government surveys should be considered conclusive and final. The constitution, however, contains no such provision, and we think it would be doing violence to its language to construe it in the same manner as though it did. In effect, the constitution provides that a county of a given area shall not be divided by an act of the legislature; or in other words, however anomalous it may appear, makes the validity of an act of the legislature dividing a county depend upon the area, without providing any method by which the area can be ascertained. Now the government surveys are in the main quite accurate, or sufficiently so for all practical purposes; and yet daily experience shows that they are not strictly so. The township lines as well as those of the sub-divisions, are frequently found to exceed or fall short of the requisite length.

Sometimes there is a discrepancy between the area as estimated by the township lines, and as estimated and determined by the lines of the legal sub-divisions. That is claimed to be the case in the present instance. Now, which is to prevail? Which must we consider conclusive. We think neither. For to say that the government surveys are entirely correct, is to say what common experience and observation prove to be untrue. In cases between individuals it is no uncommon thing to go behind the government surveys, and show that they are inaccurate. That was in effect done in the recent case of Kane et. al. vs. Parker, 4 Wis. 123. Unless, therefore, we apply a different rule to cases like the present one, from that which we ordinarily apply when the question as to the superficial contents of any portion of the government land arises between individuals, we cannot hold that these surveys are not open to question. But we are of the opinion that these surveys are to be presumed to be correct until their accuracy has been properly impeached. Dodge county, by these surveys, contains twenty-five townships which should embrace just nine hundred square miles. There is no evidence before us that this is not the true area, *prima facie*, then it falls within the constitutional prohibition, and can only be divided by a popular vote. The presumption that it contains just nine hundred square miles may, in a competent forum and in a proper manner, be rebutted and overcome. The question may be raised by the pleadings in a case so that it would be competent to show on the part of those attacking these surveys, that they were not accurate. Certainly the assumption ought not to be made that they are incorrect, and base legislation upon that assumption. If the area of Dodge county is drawn in controversy, how is the actual area to be determined, except in the way that all disputed facts are determined and settled? And it is but fair to devolve upon the party which claims that the surveys are incorrect the burden of showing that they are so; and that the area of Dodge county, regarded as a plane, all inequalities in the surface being disregarded, exceeds in measurement nine hundred square miles.

It was further insisted by the counsel for the relators that a construction which makes the extent of the area a subject of an issue, is attended with grave, if not insuperable difficulties, and that the practical application of it will lead to the most absurd consequences. It is said that if the constitutionality of a law is made to depend upon the finding of a jury, in different cases arising under it, different juries might, upon the weight of evidence, properly find differently; for that no verdict, or succession of verdicts, in any one case, would bind any other case, and thus the absurdity will be presented of the same act of the legislature being held constitutional in one case, and unconstitutional in another. We feel the full weight of this difficulty, and yet under the constitutional provision we see no escape from it. For as already observed, the constitution has made the validity of an act depend upon the extent of the area; and if the extent of the area be controverted, we suppose it must be determined in the ordinary way, like other disputed facts. The same difficulty may always arise where the validity of an act turns upon a question of fact. It seems to us to be an infirmity incident to such constitutional provisions. To avoid all inconvenience it would be desirable for the legislature not to attempt to divide a county where the area is open to dispute, without submitting the question to a vote of the people. We see no other way of obviating the difficulty.

An opposite doctrine was pressed upon our consideration. The counsel for the respondent contended that whether the county of Dodge contained more than nine hundred square miles was a question of fact, and a fact peculiarly within the province of the legislature to find and determine; that in dividing Dodge county the legislature had impliedly passed upon the question and found that it did exceed in extent an area of nine hundred square miles; that the act having received the sanction of the legislative and executive departments of the government, and having become clothed in all the forms of law, the court ought to presume in favor of its validity and sustain it. As a general rule courts undoubtedly always presume in favor of the constitutionality of an act of the legisla-

ture, and in a doubtful case will sustain it. But how can that presumption be entertained in a clear case, when the act is expressly forbidden by the language of the constitution? The reasoning, if it proves anything, proves too much. For it is manifest the same presumption would arise in favor of an act of the legislature dividing a county of an area of four or six hundred square miles. Suppose the legislature should pass an act dividing Waukesha, Walworth, or Green county, each of which counties contains sixteen townships, must not the same presumption arise? Must not the court presume that the legislature in dividing the county passed upon the question of fact, and hold that the law was valid? This applies a fair test to the soundness of the argument. It places it in a strong light to show more strikingly where it leads. Of course it would practically abrogate a provision of the constitution. But in this case there is another conclusive answer to be given to this argument. We have seen that by the 5th section of the act, provision is made for the appointment of commissioners to survey the county and determine the area. If the legislature had, in passing the act dividing the county, determined the extent of the area, why provide for a re-survey of it? Certainly it could not be necessary to re-determine a fact already found and ascertained. It seems unnecessary to enlarge upon this point. For if a presumption would ordinarily arise in favor of the constitutionality of the act upon the ground that the legislature must be supposed to have passed upon and determined the area, that presumption is completely rebutted and taken away by the 5th section.

The demurrer is therefore sustained.