State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

STATE EX REL. CARNATION MILK PRODUCTS COMPANY and another, Plaintiffs, vs. EMERY, as Dairy and Food Commissioner, Defendant.

*April 15—July 20, 1922.*

*Constitutional law: Police power: Presumption of validity of statute: History of similar legislation: Matters of common knowledge: Regulation of food: Prevention of fraud and deception: Form of regulation: Filled milk: Protection of markets: Construction of federal constitution.*

1. A law not unconstitutional becomes the public policy of the state; and before a statute can be said to be unconstitutional it must clearly lack in public purpose. The courts will presume in favor of the constitutionality of legislative acts and in case of doubt sustain them.

2. The police power of the state covers all matters having a reasonable relation to the protection of the public health, safety, or welfare, and, as applied to food, this authority extends to requiring a fixed minimum amount of nutritional elements.

3. The police power may be exercised for the prevention of fraud and deception and may be legitimately exercised against even the occasional fraud not inherent in a business or product. It embraces the right to prohibit all things which constitute obstacles to a greater public welfare and to do whatever will promote the general convenience or general prosperity, including even the preservation of the reputation of a great industry of a state against injury in markets outside of the state.

4. If the subject for the exercise of the police power is legitimate the legislature may adopt such measures as are necessary to make its action effective. They may be either regulatory or prohibitory, and either in the form of general directions or detailed measures against a particular article.

5. The power of the legislature, in the proper exercise of the police power, to prohibit an article of food is not affected because the article may be truthfully labeled or that the law will result in destroying the value of property devoted to its manufacture.

6. The legislature may exercise all legislative power not forbidden by the state constitution or delegated to the general government or prohibited by the constitution of the United States.

7. Where the objection to the constitutionality of a statute turns on the question of its reasonableness under the police power the history of legislation in that regard may be very persuasive, and if it is a debatable subject it is pertinent to know that the matter has been generally debated.

8. The court in determining whether there has been a valid exercise of the police power will consider matters of common knowledge without proof.

9. The state supreme court will not differ from the supreme court of the United States on questions involving a construction of the federal constitution.

10. The findings of a referee may be considered by the court only to refresh the memory of the court as to matters of which it takes judicial notice or to bring to its attention scientific facts which would otherwise devolve upon the court undue labor; and such findings of a referee are not conclusive on the court.

11. Under amendm. XIV, Const. U. S., providing that no state shall deprive any person of life, liberty, or property without due process of law, ch. 409, Laws 1921 (prohibiting the sale of milk products to which have been added any fat or oil other than milk fat), enacted for the purpose of preventing the manufacture and sale of compounds which could be sold in a deceptive manner, is a constitutional exercise of the police power.

12. A state has power to protect its industries in its markets in the state itself and in other states.

An action under the original jurisdiction of this court, upon the relation of the plaintiff corporations, to enjoin the defendant from enforcing the provisions of ch. 409 of the Laws of 1921, this state, as against the plaintiffs, so far as the same applies to the manufacture and sale by the plaintiffs of the product known as "Hebe."

Upon the filing of the complaint an answer was served raising certain issues of fact, which were referred to a referee for his findings. Ch. 409, in so far as it affects the plaintiffs, is as follows:

"2. It shall be unlawful for any person, firm or corporation, by himself, his servant or agent, or as the servant or agent of another, to manufacture, sell or exchange, or have in possession with intent to sell or exchange, any milk,

cream, skim milk, buttermilk, condensed or evaporated milk, powdered milk, condensed skim milk, or any of the fluid derivatives of any of them to which has been added any fat or oil other than milk fat, either under the name of said products or articles or the derivatives thereof or under any fictitious or trade name whatsoever."

The plaintiffs manufacture and have in their possession for sale Hebe, which is a compound composed chiefly of milk from which the butterfat has been extracted and cocoanut oil injected in place of the butterfat.

Plaintiffs contend that this provision of law as applied to their business is in contravention to the Fourteenth amendment to the constitution of the United States, and similar provisions of the state constitution, and to the commerce clause of the federal constitution.

Hebe is manufactured by the *Carnation Milk Products Company* in Wisconsin and its entire product sold to the *Hebe Company*. The *Hebe Company* sells the compound to jobbers and wholesalers only. The compound contains 92.2 per cent. skimmed milk or buttermilk, and 7.8 per cent. of cocoanut oil similarly evaporated as condensed milk. It is similar in taste, odor, appearance, consistency, and manner of packing to evaporated milk. The butterfat extracted from the milk is much more expensive than the cocoanut oil injected into the milk to take the place of the butterfat. Hebe can therefore be sold, and is sold, to wholesalers and retailers cheaper than the genuine evaporated or condensed milk.

The compound has been manufactured in the state for the last five years, while condensed or evaporated milk has been manufactured and on the market for the last twenty-five or thirty years. The compound is not deleterious in itself, but it is not of the same quality or food value as the genuine evaporated milk. It is lacking in a certain chemical substance known as Vitamines A, which are essential elements of a proper dietary. These vitamines may be

supplied by other foods.    It is admitted that the compound is not a proper substitute for the genuine for infants.

Hebe has been extensively advertised as a substitute for milk, through the press and magazines, and by means of cook books prepared by the *Hebe Company*.    It has been advertised in the newspapers of Wisconsin as "milk," "milk compound," and "compound of milk."    It has been sold by retailers in Wisconsin as "milk" or "evaporated milk."

There have also been advertised and sold four other similar compounds in the state of Wisconsin, either as "milk" or "compound of milk."    These compounds are also shipped out of the state and advertised and sold in other states as substitutes for evaporated milk.

In some cases the compounds are sold by the retailers at the same price as the genuine evaporated milk.    The compounds have been variously labeled at different times to indicate that they were more or less equivalent to or better than the genuine evaporated milk.    At the time of the commencement of this action Hebe was labeled: *"A Compound of Evaporated Skimmed Milk and Vegetable Fat. Contains 7.8 % Vegetable Fat, 25.5 % Total Solids."*    On the margin of the label was printed: *"For Cooking and Baking.  Do Not Use in Place of Milk for Infants."*

The *Carnation Milk Products Company* has an investment in its plants in Wisconsin of about $650,000, and of this about $50,000 in its plants is used for the manufacture of Hebe.

For the plaintiffs there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman.*

*William J. Morgan,* attorney general, and *Ralph M. Hoyt,* deputy attorney general, for the defendant.

## I.

CROWNHART, J.    It is but trite to say that the constitution of our state is the supreme law.    Therein will be

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

found the powers of the executive, legislative, and judicial branches of government, each supreme in its field but coordinate in their sources of powers and the exercise thereof.

The greatest deference must be paid by each department to the other acting within the scope of its powers. Any usurpation of power by one department at the expense of another is a wrong against the people who adopted the constitution as their charter of liberties and rights.

To the legislature was given the power to enact laws not in contravention to the constitution. A law so enacted becomes the public policy of the state. *Borgnis v. Falk Co.* 147 Wis. 327, 351, 133 N. W. 209.

Before a statute can be said to be unconstitutional the statute must lack in public purpose *"so clear and palpable as to be perceptible by every mind at the first blush"*—so said the great Chief Justice Dixon, who sat in the constitutional convention and helped frame the charter of our state. *Brodhead v. Milwaukee,* 19 Wis. 624, 652. "We must bear in mind," said Mr. Chief Justice Winslow, "the well established principle that it [the statute] must be sustained unless it be clear beyond reasonable question that it violates some constitutional limitation or prohibition." *Borgnis v. Falk Co.* 147 Wis. 327, 348, 133 N. W. 209. "The rule of all courts," said Mr. Justice Bardeen, "is that a statute will be declared unconstitutional only when it is shown beyond reasonable doubt that it conflicts with the fundamental law. It is equally true that the courts will seek every reasonable mode of reconciliation of the statute with the constitution, and it is only when reconciliation has been found impossible that it will be declared void." *State ex rel. Hicks v. Stevens,* 112 Wis. 170, 172, 88 N. W. 48. Said Mr. Justice Dodge: "We must and do concede to the legislative branch of the government the fullest exercise of discretion within the realm of reason, and, if a public purpose can be conceived which might rationally be deemed to justify the act, the court cannot further weigh the adequacy

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

of the need or the wisdom of the method." *State ex rel. Zill-mer v. Kreutzberg,* 114 Wis. 530, 549, 90 N. W. 1098. The courts will presume in favor of the constitutionality of the acts in a case of doubt and sustain them. *State ex rel. Brayton v. Merriman,* 6 Wis. 14; *Smith v. Mariner,* 5 Wis. 551; *In re Oliver,* 17 Wis. 681; *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561; *Northwestern Nat. Bank v. Superior,* 103 Wis. 43, 79 N. W. 54.

The United States supreme court has declared equally emphatically in favor of sustaining acts of Congress and the statutes of states. *Price v. Illinois,* 238 U. S. 446, 35 Sup. Ct. 892; *Rast v. Van Deman & L. Co.* 240 U. S. 342, 357, 36 Sup. Ct. 670; *Hebe Co. v. Shaw,* 248 U. S. 297, 303, 39 Sup. Ct. 125.

Cooley, Const. Lim. (7th ed.) p. 236, says:

"The rule of law upon this subject appears to be that, except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them."

Again, on page 239:

"Nor are the courts at liberty to declare an act void

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

because in their opinion it is opposed to a *spirit* supposed to pervade the constitution, but not expressed in words."

## II.

The act sought to be avoided was passed in the exercise of the police power of the state.

The police power covers all matters having a reasonable relation to the protection of the public health, safety, or welfare. *McLean v. Arkansas,* 211 U. S. 539, 29 Sup. Ct. 206.

As applied to food, this authority extends to requiring a fixed minimum amount of nutritional elements. *Hutchinson Ice Cream Co. v. Iowa,* 242 U. S. 153, 37 Sup. Ct. 28; *Hebe Co. v. Shaw,* 248 U. S. 297, 39 Sup. Ct. 125.

The police power also has an especially appropriate field of action in the prevention of fraud and deception. *Hall v. Geiger-Jones Co.* 242 U. S. 539, 37 Sup. Ct. 217.

It may be legitimately exercised against even the occasional fraud not inherent in the business or product, and, *a fortiori,* against the fraud that is inherent in it. *Merrick v. N. W. Halsey & Co.* 242 U. S. 568, 37 Sup. Ct. 227.

It extends further, and embraces the right to prohibit all things which constitute obstacles to a greater public welfare (*Rast v. Van Deman & L. Co.* 240 U. S. 342, 36 Sup. Ct. 670), and to do whatever will promote the general convenience or the general prosperity (*Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289), including even such matters as the preservation of the reputation of a great industry of the state against injury in markets outside of the state (*Sligh v. Kirkwood,* 237 U. S. 52, 35 Sup. Ct. 501).

Given a legitimate subject for the exercise of the police power, it is for the legislature to adopt such measures as it may deem necessary to make its action effective, so long as they have reasonable relation to that end. *Purity E. & T. Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44.

The measures which the legislature may adopt for such

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

purpose may be either regulatory or prohibitory, whichever the legislature deems the more effective method of accomplishing the result (*New York ex rel. Silz v. Hesterberg*, 211 U. S. 31, 29 Sup. Ct. 10), and they may be either in the form of general directions or of detailed measures against a particular article (*Price v. Illinois*, 238 U. S. 446, 448, 35 Sup. Ct. 892).

Accordingly, the authority of the legislature to prohibit an article is not affected by the fact that the article may be truthfully labeled (*Hebe Co. v. Shaw*, 248 U. S. 297, 39 Sup. Ct. 125) or that the law will result in destroying the value of property devoted to the manufacture of such article (*Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273).

"At an early day it [the police power] was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the state, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the state. *New York v. Miln*, 11 Pet. 102, 139. The police power, in its broadest sense, includes all legislation and almost every function of civil government. *Barbier v. Connolly*, 113 U.· S. 27, 5 Sup. Ct. 357. It is not subject to definite limitations, but is co-extensive with the necessities of the case and the safeguards of public interest. *Camfield v. U. S.* 167 U. S. 518, 524, 17 Sup. Ct. 864. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. *Chicago, B. & Q. R. Co. v. Illinois*, 200 U. S. 561, 592, 26 Sup. Ct. 341. In one of the latest utterances of this court upon the subject it was said: 'Whether it is a valid exercise of the police power is a question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity;' . . . and further, 'It is the

20]　　　JANUARY TERM, 1922.　　　155

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.' *Eubank v. Richmond,* 226 U. S. 137, 33 Sup. Ct. 76." *Sligh v. Kirkwood,* 237 U. S. 52, 59, 35 Sup. Ct. 501.

It is competent for the legislature to exercise all legislative power not forbidden by the constitution or delegated to the general government, or prohibited by the constitution of the United States. *Bushnell v. Beloit,* 10 Wis. 195.

Mr. Justice TIMLIN said: "We must start with the axiom that the legislature has all legislative power not withheld or limited by the constitution of the state or the exercise of which is not prohibited by the federal constitution." *Nitka v. W. U. Tel, Co.* 149 Wis. 106, 135 N. W. 492.

The police power of a state is as broad and as plenary as the taxing power. *Bittenhaus v. Johnston,* 92 Wis. 588, 66 N. W. 805.

The police power is a broad and comprehensive power, by which the rights of an individual, both as to his liberty and his enjoyment of property, may be curtailed in the interest of the public welfare, but it is not easy of accurate definition. *Huber v. Merkel,* 117 Wis. 355, 366, 94 N. W. 354.

As was said by Mr. Justice DODGE:

"By a long line of decisions and *consensus* therein by the people of the various states, it has become settled that thereby all powers of a legislative character ordinarily enjoyed by sovereign governments became vested in the state legislature, except so far as restrained expressly or by substantially necessary implication elsewhere in the constitution." *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 532, 90 N. W. 1098.

### III.

*History of Legislation Relating to Filled Milk.*

We submit a history of legislation relating to filled milk. It has been held that where the objection to the consti-

tutionality of a statute turns on the question as to its reasonableness under the police power, such history may be very persuasive. Certainly on the question of whether it is a debatable subject it is pertinent to know that the matter has been generally debated. *Adams v. Milwaukee,* 144 Wis. 371, 129 N. W. 518; *Purity E. & T. Co. v. Lynch,* 226 U. S. 192, 204, 33 Sup. Ct. 44; *Muller v. Oregon,* 208 U. S. 412, 28 Sup. Ct. 324. As was said in the latter case:

"When a question of fact is debated and debatable, and the extent to which a special constitutional limitation goes is affected by the truth in respect to that fact, a widespread and long-continued belief concerning it is worthy of consideration."

It was said by Mr. Justice HOLMES in *Noble State Bank v. Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, speaking of the police power of a state: "It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality, or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." And it has been well said, what we know as men we cannot ignore as judges; that is, we will consider matters of common knowledge without proof.

The laws prohibiting filled milk, now in force, are of three general types:

1. Laws which directly prohibit the manufacture and sale of filled milk. Of this type are the laws of New Jersey, New York, and Wisconsin.

2. Laws which prescribe standards for condensed or evaporated milk which have the effect of prohibiting the manufacture and sale of filled milk. Of this type are the laws of Colorado, Connecticut, Florida, Maryland, and Ohio.

3. Laws which permit filled milk to be sold as "imitation milk" under restrictions to prevent fraud. These restrictions are so severe as to be practically prohibitive. These are the laws of California, Oregon, and Utah.

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

The Bureau of Animal Industry of the United States Department of Agriculture, in a bulletin on "Legal Standards for Dairy Products," issued in 1919 as a typewritten bulletin, lists thirty-one states as having standards for condensed or evaporated milk, which were adopted either by an act of the legislature or by some administrative body under legislative authority, and which prescribe the percentage of solids and butterfats. These states are Arizona, California, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Hampshire, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming. In addition to the states listed in this bulletin, Connecticut and Florida have laws prescribing standards for condensed milk.

Congress has before it a prohibitory bill which has passed the House 250 to 40.

### History of Bill in our Legislature.

The legislative records show that the bill was thoroughly considered before committees of each house; that substitute amendments were offered for regulation in each house, which were defeated by large majorities; that the bill came up in each house by special order, which denotes special consideration.

The bill was passed in the assembly by a vote of 67 to 10, and in the senate by a vote of 28 to 0.

The bill was signed by the governor, who himself is a lawyer and has been attorney general of the state. The legislative members and the governor are bound by the same oath to support the constitution as are the members of this court. Their well considered action should have great weight according to judicial authority.

It will be seen that the compounds have been considered inimical to the public welfare by a large portion of the

people of this country.   We must conclude that there must have been some reasonable basis to induce legislation of this kind by so many different bodies.

## IV.

We now come to a recognized judicial authority on the subject, which finally settles the question so far as the federal constitution is concerned.

The *"Hebe" Company* shipped some of its product manufactured in Wisconsin into Ohio for sale in that state. The sale being forbidden in that state by statute, the question of the validity of the statute was raised in the United States district court for Ohio and passed upon by three judges sitting at the trial.   The statute was upheld. The *"Hebe" Company* then took the case to the United States supreme court, and there the statute was again upheld. In the United States supreme court the contention was made, as here, that the statute was in contravention to the Fourteenth amendment.  As there is no corresponding provision in our state constitution that goes so far to sustain the rights of property as the Fourteenth amendment of the federal constitution, that decision is decisive of the case here if it is followed.   While this court has the right to differ from the supreme court of the United States on this question, it will not do so on the construction of the federal constitution. Of the twelve federal judges passing on the subject three supreme judges dissented, not upon the validity of the statute but on its construction as to whether it applied to the case before them.

The United States supreme court, in *Hebe Co. v. Shaw,* 248 U. S. 297, 303, 39 Sup. Ct. 125, said:

"The purposes to secure a certain minimum of nutritive elements and to prevent fraud may be carried out in this way even though condensed skimmed milk and Hebe both should be admitted to be wholesome.   The power of the legislature 'is not to be denied simply because some innocent articles or transactions may be found within the pre-

20] JANUARY TERM, 1922. 159

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

scribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat.' *Purity E. & T. Co. v. Lynch,* 226 U. S. 192, 204, 33 Sup. Ct. 44. If the character or effect of the article as intended to be used 'be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury,' or, we may add, by the personal opinion of judges, 'upon the issue which the legislature has decided.' *Price v. Illinois,* 238 U. S. 446, 452, 35 Sup. Ct. 892; *Rast v. Van Deman & L. Co.* 240 U. S. 342, 357, 36 Sup. Ct. 670. The answer to the inquiry is that the provisions are of a kind familiar to legislation and often sustained, and that it is impossible for this court to say that they might not be believed to be necessary in order to accomplish the desired ends."

As was said by Mr. Justice DODGE:

"The reasons for a given statute are for the legislature, if there are any which can fairly have weight. They are not for the courts. The latter have no control over the validity of a law unless they can say with substantial certainty that no argument or consideration of public policy exists which could have weight with any reasonable and honest man. If any such argument or reason can be suggested, its weight or sufficiency is not debatable in the courts. The existence of legitimate and adequate reasons for any law should not lightly be denied. Human minds differ, and what may seem inadequate or irrelevant to one may seem cogent to another. One is not justified, therefore, in assuming that all who differ from him are unreasonable or are not acting in good faith. It is from such considerations as these that the courts have laid down for themselves the rule that only in a clear case—clear beyond reasonable doubt—will they venture to assert that a law is without reason to support either its purpose or the classifications it may make." *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 438, 87 N. W. 561.

## V.

The findings of the referee are not conclusive on the court. They may be considered only to refresh the memory

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

of the court as to matters of which the court will consider as common knowledge and of which it takes judicial notice, or for the purpose of bringing to the attention of the court scientific facts which would otherwise devolve upon the court undue labor.

If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court. 6 Ruling Case Law, pp. 102–116, §§ 101–116, inclusive, and cases there cited.

The compounds manufactured and sold by the plaintiffs and other companies are in exact imitation of the genuine evaporated milk. They are produced and sold by the manufacturer cheaper than the genuine. They are not of equal food value as the genuine. They may be sold, however, and are susceptible of being sold to the public for the genuine at the same price. They are therefore capable of being used for fraudulent purposes and to deceive purchasers. The temptation of retail dealers is to sell the cheaper article in place of the more expensive article to increase their profits. If used as a substitute for milk the public health may be impaired, not because the compounds are in themselves deleterious, but because they lack in certain food elements essential to a well-balanced dietary. It was competent, therefore, for the legislature to find that the manufacture and sale of the compounds in question were conducive to fraud and deception and likely to be injurious to the public health. Having so found, as we must conclude it did, it is not for this court to set its judgment against that of the legislature.

## VI.

By reference to the federal census of 1920 we find that Wisconsin ranks first among all the states of the Union in total value of dairy products from its farms. It had 2,763,488 dairy cattle in that year, an average of more than ten to the farm. It held first rank in milk production, producing 858,258,521 gallons, valued at over $230,000,000. It produced more cheese than any other state, the value of which amounted to $91,462,678. It ranked second in amount of butter produced. It ranked first in the manufacture of condensed milk. It ranked second in milk powders produced. In 1920, 64.9 per cent. of the nation's cheese was produced in this state, and 26.6 per cent. of her condensed milk, 24 per cent. of her milk powders, and 11.4 per cent. of the nation's butter were produced here. Nor is this all. The great dairy industry of this state is reflected in the high average production of agricultural crops of many varieties. The fertilizers from the dairy industry enrich the soil, so that of the North Central states Wisconsin was the first in ten years' average yield per acre in wheat and potatoes, second in barley and hay, third in corn, oats, and rye.

The reputation of Wisconsin for the purity and excellence of her dairy products stands high in the markets of the country, and the prices she obtains therefor are equally well sustained.

The constitution of our state was ordained, among other things, to promote the general welfare. Thus it might well be that the legislation in issue could be upheld to protect the reputation of the state for its dairy products in the markets of the country from adulteration and misleading representations. The advertisements of cocoanut-oil compounds have been skilfully prepared to give the impression that the compounds are equal to if not better than the

genuine dairy product. For instance, a full-page advertisement in the Chicago Tribune contains a typical gem of the advertiser's art:

"Nutro is a delicious and nutritious new milk product. It is prepared in the rich dairying districts of Wisconsin and Indiana, and made of pure, fresh cow's milk with the animal fats extracted and essential food values replaced by a refined, rich, sweet, purely vegetable cocoanut fat.

"Nutro is pure, delicious, wholesome. It is prepared in model condenseries, from pure cow's milk evaporated to double strength, with the animal fats extracted and then enriched with sweet, edible, highly-refined cocoanut fat."

Comment is unnecessary, other than to say that other advertisements are equally well calculated to convey the idea to the public that pure, fresh cow's milk from Wisconsin has been enriched and improved by the injection of sweet, edible, highly-refined cocoanut fat.

The state is not without power to protect its industries in its markets in this and other states, according to a decision of the supreme court of the United States upholding a statute of Florida designed to protect its fruit trade. We quote from *Sligh v. Kirkwood,* 237 U. S. 52, 61, 35 Sup. Ct. 501:

"We may take judicial notice of the fact that the raising of citrus fruits is one of the great industries of the state of Florida. It was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other states wherein such fruits find their most extensive market. The shipment of fruits so immature as to be unfit for consumption, and consequently injurious to the health of the purchaser, would not be otherwise than a serious injury to the local trade, and would certainly affect the successful conduct of such business within the state. The protection of the state's reputation in foreign markets, with the consequent beneficial effect upon a great home industry, may have been within the legislative intent, and it certainly could not be said that this legislation has no reasonable relation to the accomplishment of that purpose."

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

Nothing will destroy the reputation of the state in this industry more completely than to allow the manufacture of a cheap and inferior article to be advertised and sold in the markets of the world as and for the genuine article made in Wisconsin.

The principle of allowing these compounds to be manufactured and sold, followed to its logical conclusion, will lead from "filled" milk to "filled" butter, from "filled" butter to "filled" cheese, and finally we may have the "synthetic" cow taking the place of the domestic animal of the farm. Vegetable fats, cheap, but lacking in essential elements of vigorous life, will take the place of butterfats of demonstrable higher food value. A great industry of a great state will decline, a victim of "national advertising" of cheap and deceptive substitutes.

It follows that the act challenged by this action is constitutional and within the police power of the legislature.

*By the Court.*—The action is dismissed.

The issues of fact were exhaustively presented to the referee, Hon. A. G. Zimmerman, who made and presented to the court able and comprehensive findings of fact. His claims for services and disbursements are allowed.

Costs will be taxed against the plaintiffs as follows:

| | |
|---|---:|
| Services referee 20 days at $25 per day... | $500 00 |
| Services reporter, 12 days at $10 per day.. | 120 00 |
| Transcribing 4,790 folios at 10c.......... | 479 00 |
| Clerk's fees ......................... | 14 75 |
| | $1,113 75 |

No other costs to be taxed.

Rosenberry, J. (*concurring*). I concur in the judgment in this case. Because I am not prepared to assent to the far-reaching intimation in the opinion that the dairy interest, because of its magnitude and commercial importance, may be entitled for that reason to special consideration and

protection, I feel it my duty to state the grounds upon which my conclusion rests.

Ch. 409 of the Laws of 1921 is an exercise of the police power by the legislature. The act is valid unless it clearly contravenes some provision of the state or federal constitution. The specific ground upon which it is alleged to be invalid is that it has no relation to the public health or to the prevention of fraud and deceit. Primarily, the determination of whether or not the public health may be injuriously affected or whether the public may be defrauded or deceived by the manufacture and sale of an article is for the legislature. Its determination in that regard is not to be reviewed by this court as an ordinary finding of fact. It is the duty of the court to sustain the law unless it clearly appears to be arbitrary and unreasonable or passed for some ulterior purpose and not in the interest of the general welfare, or to have no relation in fact to the purported legislative purpose. If the situation is such that a fairly debatable question is presented, one upon which reasonable men may fairly differ within established legal rules, then it is for the legislature, and the court should not interfere even if, in its opinion, the conclusion of the legislature is an erroneous one. The facts and circumstances stated in the opinion show that the situation which confronted the legislature of this state is one with which several legislatures have been called upon to deal, and their determination has been that a situation does exist which requires the exercise of legislative power in order to protect the public health and prevent fraud and deception. That some have dealt with it in one way and some in another merely indicates a varying judgment as to what is necessary to advance the public welfare. This is not conclusive but persuasive. In the face of the fact that the legislature of this state and the legislatures of other states have arrived at the same conclusion, and giving effect to the presumption stated in the opinion, it cannot, in my judgment, be said

20]          JANUARY TERM, 1922.          165

State ex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147.

that the matter is so clear as not to be debatable.    Therefore the matter was for the legislature and its action is conclusive.

The referee found:    *

"That the compound Hebe is not harmful or deleterious as a food for human consumption either for adults or children; but that Hebe, though not in itself harmful, is not a desirable or proper food for use as a beverage for infants or as a complete substitute for milk, because of its lower Vitamine A content.

"That the compound Hebe is a wholesome food product for human consumption in the sense, for instance, that bread, potatoes, or lean meats, or cereals, or fruits, are wholesome foods, each for their various uses and purposes; and that the use and purpose of Hebe as a food is especially in cooking and baking for its additional or substitutional protein, caloric, and shortening values."

It is urged that the finding is conclusive upon the court; that there was, under the facts in this case, no legitimate ground of interference by the legislature.    The argument thus advanced gives to the finding of the referee a weight and efficacy which it does not possess.

The validity of an act of the legislature cannot be made to depend upon a finding of fact by a court or the verdict of a jury in a particular case.    *State v. Layton,* 160 Mo. 474, 61 S. W. 171, 62 L. R. A. 163; *St. Louis v. Liessing,* 190 Mo. 464, 89 S. W. 611, 1 L. R. A. n. s. 918.

If the protection of the public health requires that the sale of adulterated milk shall be prohibited, it is in the power of the legislature to do so even though there may be some articles in the prohibited class which are in and of themselves harmless.    *Hebe Co. v. Shaw,* 248 U. S. 297, 39 Sup. Ct. 125; *Purity E. & T. Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44.

It is for the legislature to say whether the sale of the adulterated article shall be prohibited or shall be regulated, and, having spoken, the court may not substitute its judg-

ment for that of the legislature, for in doing so the court would exercise legislative rather than judicial power, the matter being one which is within the legislative field.

The decision in *Hebe Co. v. Shaw, supra,* is to my mind conclusive of the only doubtful question presented here, and that is whether or not the manufacture and sale of an article in and of itself wholesome and not unhealthful may be prohibited for the reason that it falls within a class of articles the sale and manufacture of which as a whole may be detrimental to the public health and may be made the basis of fraud and deception and may therefore be prohibited.

In my judgment the question presented in *Sligh v. Kirkwood,* 237 U. S. 52, 35 Sup. Ct. 501, is not presented by the record in this case. The proposition there decided is not necessary to a decision of this case. There seems to me to be a clear distinction between that case and this. The article dealt with in that case was one admittedly unfit for use as food. Ch. 409, Laws 1921, deals with an article which is wholesome but has less food value than the article for which it may be sold as a substitute. This phase of the case has not been fully argued here and I prefer to rest my conclusion upon the grounds stated.

ESCHWEILER, J., dissents.