

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 4, 1959

Honorable J. E. Winfree, Chairman
Committee on Criminal Jurisprudence
House of Representatives
Austin, Texas

Opinion No. WW-611

Re: Constitutionality of
Senate Bill 444, 56th
Legislature.

Dear Mr. Winfree:

You have asked us to expedite our opinion upon the constitutionality of Senate Bill No. 444 which is now pending before the Committee on Criminal Jurisprudence of the House of Representatives.

Section 1 of the Act provides as follows:

"Any person who participates in or organizes a 'nudist colony' or 'nudist camp' or any person who displays himself or herself to other persons in the nude as a member of a group of persons engaged in such activity, commonly called 'nudist camps' shall upon conviction, be punished by a fine of not more than Five Hundred Dollars ($500.00) or by confinement in the county jail for not more than one year, or both such fine and confinement."

Section 1 speaks of "nudist colony" and "nudist camp". We understand these to be synonymous terms, according to popular usage and understanding, and we assume that they were so used in the Bill.

The terms "nudist colony" and "nudist camp" are not defined by the Bill and hence, under well established rules of statutory construction, the ordinary signification must be applied thereto. Texas Bank & Trust Co. v. Austin, 280 S.W. 161, 115 Tex. 201; Spears v. City of San Antonio, 223 S.W. 166, 110 Tex. 618; Texas & P. R. Co. v. Railroad Commission, 150 S.W. 878, 105 Tex. 386. The terms, according

2984

to their natural, ordinary and popular meaning, denote a place where the cult or practice of nudism is observed. (See Webster's new International Dictionary)

In the emergency clause of the Bill the Legislature expressly declares that the several nudist camps, alleged to be operating in Texas at the present time are having a damaging effect on the morals of the youth and the State as a whole.

We believe that the general tenor of the Bill represents a valid exercise of the police power vested in the Legislature. Police power is the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. Ex Parte White, 198 S.W. 583, 82 Tex.Cr. 85; Marrs v. City of Oxford, 280 U.S. 573; 16 C.J.S., Constitutional Law, Section 174. It comprehends reasonable preventive measures no less than the punishment of perpetrated offenses; and it may act to prevent apprehended dangers to the safety, morals or well being of the public as well as to control those already existing. 16 C.J.S., Constitutional Law, Section 175 and cases cited. If the object to be accomplished is conducive to the public interest, a Legislature may exercise a large liberty of choice in the means employed to enforce and exercise its police powers. Lawton v. Steele, 152 U.S. 133; City of Bermingham v. Monks, 185 F. 2d 859, certiorari denied, 341 U.S. 940. When the subject of legislation falls under the police powers of the State, activities may be prohibited altogether, limited as to place and location, or, where operation is permitted, may be regulated by rules of conduct. Kelly v. State, 138 S.W.2d 1075, 139 Tex.Cr. 156; State v. Emery, 189 N.W. 564, 178 Wis. 147.

Indecent exposure of the person is a crime denounced by the common law. 93 A.L.R. 997. The Penal Codes of many states contain provisions, condemning in varying terms, the offense. (See Articles 474 and 535c of the Texas Penal Code)

In the early case of State v. Roper, 18 N.C. (1 Dev. & B.L.) 208 it is said:

"A public exposure of the naked person is among the most offenseive of those outrages on decency and public morality. It

is not necessary to the constitution of
the Criminal Act that the disgusting
exhibition should have been actually
seen by the public; it is enough if the
circumstances under which it was obtruded
were such as to render it probable that
it would be publicly seen, thereby en-
dangering a shock to modest feeling, and
manifesting a contempt for the laws of
decency."

In the early English case of Rex v. Cruden, 2
Compb. 89, 170 Eng. Reprint 1091, the Court held that
since the necessary tendency of the Act is to outrage
decency and corrupt the public morals, one who commits
it is guilty whatever his intentions may have been.
The consent of the witnesses has been held not to take
away the criminal character of the Act. State v. Martin,
125 Iowa 715, 101 N.W. 637 (1904).

The Courts have displayed a strong tendency to
uphold and enforce the offense as defined by statute,
however, strict or lenient the Legislature might have
been in defining the elements of the offense. This is
aptly illustrated by the annotation of cases reported
in 93 A.L.R. 996. This constitutes compelling evidence
that the judiciary has recognized, and continues to
recognize, that the offense is a matter affecting the
public morals and that the Legislature is vested with a
high degree of discretion in legislating upon the subject.
People v. Ring, 255 N.W. 373, 267 Mich. 657, is the first
case, and the only one insofar as we can ascertain, to
present the question whether the group beliefs or prac-
tices of the offenders will affect the criminal nature of
the Act of exposure prohibited by a statute providing that
any person who shall designedly make any open or indecent
exposure of his or her person, or the person of another,
shall be guilty of a misdemeanor. In that case the opera-
tor of a nudist camp who went about privately without
clothing among both male and female members of the camp on
his own property was held guilty of a violation of the stat-
ute, although the sense of decency, propriety, and morality
of those persons were not offended. The Court said:

"It is clearly shown that the appellant
designedly made an open exposure of his person
and that of others in a manner that is offen-
sive to the people of the State of Michigan.

2986

Such exposure is both open and indecent.

"It is not necessary that the crime
be particularly well defined. The average
jury, composed of members of the community,
has an instinctive realization of what con-
stitutes a violation of the Act. Instinc-
tive modesty, human decency and natural
self-respect require that the private parts
of persons be customarily kept covered in
the presence of others. People v. Kratz,
230 Mich. 334, 203 N.W. 114."

The evidence used against the Defendant in the
Ring case, supra, was obtained when officers visited a
nudist colony operated by the Defendant in what the
Court described as a "more or less secluded location in
the country." The officers visited the camp without a
search warrant, which the Court held to be unnecessary,
and found about fifteen or twenty naked men and women
and children, described by a neighboring property owner
as "cavorting around", some on the bank of a creek and
others engaged in harmless amusements such as volley
ball. The group consisted of the Defendant, his wife,
and two children, six other couples who were married,
three unattached men, and two other children.

The Court held that the acts of the Defendant fell
within the prohibition of the statute, since the people of
Michigan had decreed that it shall be illegal for anyone to
designedly make any open or indecent or obscene exposure of
his or her person or the person of another. The exposure
was still illegal even though it occurred in a nudist colony
in the presence of only those who belonged to the cult and
who were also nude.

The basic doctrine of the Ring case was reaffirmed
by the Supreme Court of Michigan, by a divided Court, as
late as September, 1958. People v. Hildabridle, 92 N.W.2d
6. See also People v. Burke, 276 N.Y.S. 402 (1934) wherein
the Supreme Court of New York gives apparent recognition to
the authority of the Legislature to enact laws prohibiting
nudist camps.

We believe that the reasoning of the Supreme
Court of Michigan in the Ring case together with the ex-
pressions from cases of other jurisdictions which we have
cited sustain the constitutional validity of Senate Bill

444. The Bill prohibits that conduct which the Legislature of Texas in the exercise of its police power for the protection of the morals and well being of the people of Texas, is authorized to either regulate or prohibit.

The Attorney General's office will upon request make available to both the committee and the author of the Bill suggestions which may clarify the Bill. Such suggestions are the result of our examination of the statutes of other states.

### SUMMARY

Senate Bill 444 constitutes
a legitimate exercise of the
police powers of the State
and hence is constitutional.

Yours very truly,

WILL WILSON
Attorney General of Texas

By ~~Leonard Passmore~~

Leonard Passmore
Assistant

LP:rm

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Paul W. Floyd, Jr.
Dean Davis
James Daniel McKeithan

REVIEWED FOR THE ATTORNEY GENERAL
BY: W. V. Geppert