## RAYNOR vs. THE STATE.

*January 17 — February 3, 1885.*

*(1) Writ of error to municipal court of Milwaukee.  (2, 3) Evidence as to right to title of doctor, etc.: Burden of proof: Immaterial error: Diploma.  (4) County medical societies: Homeopathic physicians.*

1. Under sec. 2499, R. S., as amended by sec. 1, ch. 256, Laws of 1879, a writ of error may issue out of this court to review any final judgment of the municipal court of Milwaukee.

2. Ch. 256, Laws of 1881, providing that in prosecutions thereunder the burden of establishing his right to use the title of doctor shall be upon the defendant is valid; and the admission of incompetent evidence given by the state in an endeavor to prove, in the first instance, that the defendant had no such right, is *held* to have been an immaterial error.

3. The fact that a diploma is issued to a person and that he is admitted to membership of a county medical society as provided in sec. 1425, R. S., is *prima facie* evidence that he was entitled to such diploma and to be admitted to such membership.

4. The terms "physicians and surgeons" in sec. 1422, R. S. (providing for the organization of county medical societies), are not limited to any one school of practitioners, and the fact, therefore, that such a society is organized by homeopathic physicians does not affect the legality of the organization.

ERROR to the Municipal Court of *Milwaukee* County. The facts are sufficiently stated in the opinion.

*W. J. Turner*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General*, and oral argument by *H. W. Chynoweth*, Assistant Attorney General.

TAYLOR, J.    This action is brought to this court upon a writ of error, directed to the municipal court of Milwaukee, for the purpose of reviewing a judgment of that court rendered upon a criminal complaint against the said plaintiff in error for a violation of the provisions of sec. 1, ch. 256, Laws of 1881.    Upon the hearing of this case the learned attor-

ney general made no argument upon the merits of the case, but contented himself with moving to dismiss the action on the ground that this court had no authority to issue a writ of error to the said municipal court to bring up for review a judgment of that court of the character of the judgment in question. It is insisted that, under the law organizing the municipal court of Milwaukee, in all cases of judgments rendered in criminal actions in that court where a justice of the peace would have had jurisdiction to hear and try the same were it not for the statutes organizing and giving jurisdiction to the municipal court, no writ of error will lie to that court to review the same; and if such judgments can be reviewed at all, the review must be either by appeal to the municipal court itself in term time, or to the circuit court of Milwaukee county, as in other cases of appeal from justice's judgments in criminal actions.

The action in which the judgment was rendered in the case at bar was one of which a justice of the peace would have jurisdiction. Sec. 1, ch. 256, Laws of 1881; sec. 4739, R. S. The argument is that because a writ of error would not lie to review the judgment of an ordinary justice of the peace, had the judgment been rendered in an action before such justice, therefore it will not lie to review the judgment rendered in the same action in the municipal court. The right of this court to review the judgment in this case upon a writ of error issuing from this court depends upon the law conferring jurisdiction upon the municipal court, and not upon the nature of the action itself. There are hundreds of actions, both civil and criminal, of which a justice's court has jurisdiction, which may be and are commenced in the circuit court, and other courts of record in this state, and in which final judgments are rendered, yet it never has been doubted that all such judgments not only may, but in the absence of some law to the contrary they must, be reviewed in this court, either upon appeal or writ of error, in the same man-

ner that any other judgments in said court are reviewed which are rendered in actions over which justices' courts have no jurisdiction.

There is nothing, therefore, in the fact that the action in this case in which judgment was rendered was an action of which a justice had jurisdiction, which prevents this court from reviewing such judgment upon writ of error. If there be any valid objection to the jurisdiction of this court in this case, we must look for it in the law conferring jurisdiction upon the municipal court of Milwaukee. For the purposes of this case we need not trace the history of said court further back than the Revised Statutes of 1878. Sec. 2499, R. S., continued the court and declared its jurisdiction, and made it a court of record as to a certain part of its powers. The section then contained these words: "No justice of the peace or court commissioner, within said city, shall exercise any jurisdiction in any criminal cases, but all such jurisdiction is vested in said court and the judge thereof, and all examinations, recognizances, and commitments from said judge, and from the other justices of the peace of said county, in criminal cases, shall be certified and returned to said municipal court, instead of the circuit court, of said county; and all such cases shall thereafter be proceeded in and tried in said municipal court, as provided by law for similar cases in circuit courts." This provision did not confer upon the municipal court the power to try a criminal case which was triable in a justice's court, but only to substitute the jurisdiction of the municipal court for the jurisdiction of the circuit court in criminal cases, with the additional power in the court or judge to take preliminary examinations and hold for trial. The following clause in this section confirms this fact, because it limits the review of its judgments in criminal cases to such as would be reviewable if they had been rendered in the circuit court. The clause reads as follows: "The judgments of said

municipal court, in criminal cases tried upon informations, indictments, or appeal, may be reviewed by the supreme court in the same manner as judgments of the circuit court may be."

Sec. 2501, R. S., reads as follows: "The judge of said court has all the powers and jurisdiction of a justice of the peace in criminal cases, and shall have jurisdiction of all prosecutions for breach of any ordinance, law, rule, regulation, and resolution of the city of Milwaukee; for the latter purpose he shall open court each morning (Sundays and legal holidays excepted), and hear and dispose of, in a summary way, all cases for such breaches which shall be brought before him by the police officers of said city, or otherwise, either with or without process, and impose the fines and penalties provided by any such ordinance, law, rule, regulation, or resolution."

It will be seen that this section gives the *judge* of the municipal court the jurisdiction of a justice of the peace in criminal cases, as well as jurisdiction of all actions for breaches of the ordinances of the city, and nowhere in the statutes of 1878 was there any appeal or review of judgments rendered in such action given to any other court. Under the law as it stood in 1878 there was, to say the least, very grave doubt whether the judgments rendered by the municipal judge in the actions mentioned in said sec. 2501, could be reviewed by this court by writ of error. The statute having expressly given the right to review the judgments of the court acting as a court of record, and limited the review to such judgments only, it could well have been argued that judgments rendered by the municipal judge under the jurisdiction conferred, not upon the court, but upon the judge, under sec. 2501, were not to be considered as the judgments of a court of record, but as the judgments of the municipal judge, acting in the capacity of a justice of the peace for said city with exclusive jurisdiction, and

that, consequently, in such cases, the right to review such judgments still remained in the circuit court of the county, or, perhaps, by an appeal from the judgment of the judge acting as a justice, to the municipal court acting as a court of record. But it is unnecessary to determine what would have been the rights of a party to this action under the law as it stood in 1878, as by ch. 256, Laws of 1879, this difficulty and uncertainty in the law was intended to be, and we think was, remedied. Sec. 1, ch. 256, Laws of 1879, amends sec. 2499, R. S., as to the clause first above quoted, so that the jurisdiction in regard to criminal complaints, trials, and appeals is vested in the "municipal court" instead of "in the court and the judge thereof." The words, "and in the judge thereof," are purposely omitted in the amendment. The clause in regard to the review of the judgments of the municipal court is changed so as to read as follows: "The judgments of the municipal court, in all cases tried before it, may be examined and reviewed by the supreme court, in the same manner as the judgments of the circuit court may be."

Sec. 3 of said ch. 256 amends sec. 2501 as to jurisdiction by making the section read as follows: "The *municipal court* has all the powers and jurisdiction heretofore vested in the police justice of said city, in all cases of crimes and misdemeanors arising in said city, and has jurisdiction of all prosecutions for breach of any ordinance, law, rule, regulation, or resolution of said city; for such purposes said municipal court shall be open, etc. . . . . The provisions of an act entitled ' An act to establish a code of procedure for the police court of the city of Milwaukee,' approved March 17, 1853, so far as the same are applicable, shall apply to the municipal court, except the sixth section of said act, which is repealed." The sixth section of the act of 1853, establishing the police court for the city of Milwaukee, and which was repealed by the section above quoted, gave the defendant in all city prosecutions the right

to appeal from the judgments rendered against him in that court to the circuit court of Milwaukee county, and prescribed the method of taking such appeal.

It seems to us very clear that the amendments of 1879, by which all jurisdiction in criminal cases is expressly conferred upon the court instead of the judge; the fact that the limitation put upon the right to review the judgments of that court by sec. 2499, R. S., was removed, and the right of review was extended to the judgments of the courts in all cases tried in that court; and the fact that sec. 6 of the police court act, which gave an appeal from the judgments of that court to the circuit court, was expressly repealed,— disclose a very clear intent that all the judgments of the municipal court should be put upon the same footing as the judgments of other courts of record in the state, and that the right to review the judgments of that court should be vested in the supreme court alone.

That the municipal court of Milwaukee is a court of record must be admitted. The act creating it and defining its powers declares it to be a court of record, and it has been recognized as such by this court in many cases which have come before it on writ of error issued to that court. It is a proper court, therefore, to which the writ of error from this court may issue; and as the legislature has seen fit to confine the review of its judgments to this court, this court has the right to review its judgments without an intermediate appeal to the circuit court. *Harrison v. Doyle,* 11 Wis. 283; *McNab v. Noonan,* 28 Wis. 434, 443, 444. These cases settle the question of the constitutionality of the law giving an appeal directly from the county courts which have jurisdiction of civil actions, to the supreme court; and the same argument which sustains that law will sustain the right to an appeal or writ of error from this court to review the judgment of any other inferior court of record, either in a civil or criminal action.

A large number of appeals in civil actions have been taken

to this court from the municipal court of Ripon, and heard in this court without objection, and very many cases have been brought to this court by writ of error from judgments rendered in criminal actions in the municipal court of Milwaukee, and no objection has been made to the regularity of such proceedings, or to the jurisdiction of this court to review such judgments. It may be true that the judgments which have been brought to this court for review from the municipal court were judgments rendered upon informations or indictments, or upon appeals from justices of the peace of the county; but that fact cannot affect the question as to the jurisdiction of this court to review a judgment of the municipal court. If the legislature have the right to confer the exclusive power to review the judgments of that court in a particular class of cases, they have the right to confer it in all cases. Under the decisions of this court above cited, the appellate jurisdiction of the circuit courts is such and such only as is given to them by law.

There is nothing, therefore, to prevent the legislature from giving direct appellate jurisdiction to the supreme court from the judgments of any court of record, and, possibly, from any court. It may be doubtful whether the municipal court of Milwaukee is an inferior court, within the meaning of sec. 8, art. VII, of the constitution. See sec. 2, art. VII. And the objection which was made to a direct appeal to the supreme court from a county court, which is admittedly an inferior court, made in the cases above cited, would not be applicable to this court. As to all criminal actions arising in the county of Milwaukee, certainly the municipal court is not inferior to the circuit court of that county, but has the same jurisdiction as to all crimes triable upon information or indictment, and a greater jurisdiction as to the trial of all lesser crimes.

We see no reason for holding that the writ of error was not properly issued in this case. We think the statute

expressly gives the right to review any judgment of that court upon writ of error from this court, and we find no constitutional provision which can be construed to prevent the legislature from conferring that right and duty upon this court.

The motion of the learned attorney general to dismiss the action must be denied. We must, therefore, look into the record to ascertain if any errors were committed on the trial which should work a reversal of the judgment.

The plaintiff in error was prosecuted for violating the provisions of sec. 1, ch. 256, Laws of 1881; that is, for prefixing the title "doctor" to his name, and assuming the title of physician and surgeon, without having a diploma from any duly incorporated medical society or college, and without being a member of the state or any county medical society legally organized in the state of Wisconsin. In order to escape the penalties of sec. 1, ch. 256, Laws of 1881, every person practicing medicine or surgery, and using the name or title of "doctor" in this state, must show either that "he has received a diploma from some incorporated medical society or college, or that he is a member of the state or some county medical society legally organized in this state."

On the trial of this action in the municipal court, the court permitted a witness for the state, against the objection of the accused, to state that the accused showed him at one time a diploma granted by a society claiming to be the Washington & Dodge County Homeopathic Medical Society, and then permitted the same witness to state that such society was not incorporated, to his knowledge. A certificate of the register of deeds of Washington county was also received in evidence, for the purpose of showing that there was no such organization as the Washington & Dodge County Medical Society incorporated. The same witness also testified that the accused showed him all he had, and

that "it was a certificate signed by S. J. Randall, as president of the Washington & Dodge County Medical Society."

If it had been incumbent on the state to prove affirmatively that the accused had no such diploma as required by law, and that he was not a member of the state or any county medical society legally organized in this state, the testimony of the witness as to what the accused had said upon the subject would undoubtedly be competent; but we are at a loss to understand how the certificate of the register of deeds of Washington county could be competent to prove the non-existence of a duly organized county medical society. Sec. 1422, R. S. 1878, which authorizes the organization of county medical societies, does not require that the evidence of such organization shall either be filed with the register of deeds of the county, or be recorded by him. His certificate, therefore, that no such organization existed in his county, could have no more force as evidence than the certificate of any other intelligent person in said county. It was certainly incompetent evidence. But as this evidence was given by the state in an endeavor to establish the negative proposition that the accused had neither the diploma required by the statute, nor was he a member of the state or any county medical society legally organized in this state,— a proposition which it would be almost impossible to establish, unless it could be done by proof of the admissions of the accused,— and as the law has plainly cast the burden of proving his authority to use the title of "doctor" upon the accused, the error in admitting this evidence did not affect the rights of the accused, and would not, in itself, be sufficient to reverse the judgment. The power of the legislature to cast the burden of proving the right to assume the title of "doctor" upon the accused, in a prosecution of this kind, we think cannot be doubted, and is not, in fact, denied by the learned counsel for the plaintiff in error. See 1 Greenl. Ev. § 79; *King v. Turner*, 5 Maule & S. 206; *Shel-*

*don v. Clark,* 1 Johns. 513; *U. S. v. Hayward,* 2 Gall. 485; *Smyth v. Jefferies,* 9 Price, 257; and other cases cited in note 1 to said section. The evidence of the right of the accused to use the title "doctor," under the statute, must necessarily be in his possession, or, if not, the facts upon which his right is founded must be within his knowledge, and it is no unjust requisition to compel him to produce the evidence of his right; while, on the other hand, to require the state to establish the negative would render it impossible for it to establish the fact unless it could do so by proof of the admissions or confession of the accused.

On the defense the accused showed, as we think, the legal organization of a medical society in the county of Washington. The proceedings showing the organization of such county medical society were offered in evidence. These proceedings show that some homeopathic physicians of Washington county met at the county seat on the 20th of June, 1880, and then and there organized a county medical society. The officers required by the statute were elected, and the proper number of censors appointed so as to complete the organization as required by the statute. The record of the proceedings does not show that a vice-president was elected at this first meeting, but it appears that at a subsequent meeting within the current year, and before the election of officers for the ensuing year, S. J. Randall was recognized as the vice-president of the society, and at the first annual meeting, on June 24, 1881, a president, vice-president, secretary, corresponding secretary, and treasurer were duly elected, and the president appointed the necessary number of censors. The records also disclose that the society has continued its existence by annual elections in 1882 and in 1883.

The records of the society introduced in evidence by the defendant show that he obtained a diploma from this county medical society, as provided for by sec. 1425, R. S., and that

he was duly admitted as a member of such society. The fact that a diploma was issued to him, and that he was admitted to a membership of the society, must, we think, be taken as *prima facie* evidence at least that he was entitled to such diploma, and that he was also entitled to be admitted as a member of such county society. He therefore established the fact that he was a member of a county medical society legally organized in this state, and so had the right to affix the title of "doctor" to his name.

The fact that there was evidence of the organization of the Rock River Medical Society at West Bend in 1872, does not show that a county medical society had been organized in the county of Washington previous to the organization in 1880, so as to render the organization in 1880 illegal and void under sec. 1422, R. S. The society organized at West Bend in 1872 was evidently not organized as a county society within the meaning of the provisions of ch. 33, R. S. 1858, as amended and found in 1 Tay. Stats. 708, 709, then in force; otherwise it would have taken the name of the Washington County Medical Society, as required by sec. 1 of said chapter. It was undoubtedly organized under ch. 146, Laws of 1872, as the articles of association were verified by two of its members, and recorded with the register of deeds of Washington county, as required by said ch. 146. At all events, it did not take the name and was not organized as the Washington County Medical Society, but as the "Rock River Medical Society," and is declared to be "auxiliary to the Medical Society of the State of Wisconsin."

The record, therefore, shows nothing which renders the organization of the Washington County Medical Society illegal or void, and the accused having shown himself a member of such society was clearly not guilty of the offense charged against him. The fact that the medical men who organized the Washington County Medical Society were of the school of doctors known as "Homeopathists," does not,

we think, affect the legality of the organization. The language of the statute is: "The physicians and surgeons, not less than five in number," etc. This language must be construed to mean all who practice physic and surgery, and who are recognized by the people as physicians and surgeons, and cannot be limited to one school of practitioners in preference to all others. Those who practice medicine in this state, belonging to the school of homeopathists, are so numerous, and their reputation for learning and skill in their profession is so well established, that we cannot say they are not included in or designated as physicians and surgeons by the terms of the statutes.

As the case was tried by the judge without a jury, the judgment is reversed, and the cause is remanded to the municipal court with directions to enter judgment in favor of the plaintiff in error.

*By the Court.*— It is so ordered.