KREUTZER, Plaintiff in error, vs. WESTFAHL, Defendant in error.   [Habeas corpus.]

*May 14—June 22, 1925.*

*Blue Sky Law: Information: Sufficiency: Failure to negative exceptions: Form of pleading prescribed by legislature: Evidence on preliminary hearing: Sufficiency: Review by habeas corpus: Licenses to sell securities: Power of legislature to require: Constitutionality of Blue Sky Law.*

1. An information for violation of the Blue Sky Law (secs. 183.25 to 183.45, Stats.) is not defective because of failure to negative the statutory exceptions.  p. 478.
2. At common law an exception or qualification in a separate section of a statute, or in a proviso which is distinct from the enacting clause, is a matter of defense which the prosecution need not anticipate.  p. 477.
3. In the absence of constitutional restrictions the legislature may prescribe the requirements of pleadings in criminal as well as civil cases; and the fact that sub. (4) and (5), sec. 183.39, Stats., were enacted after the offenses involved were alleged to have been committed, does not prevent their application, since they relate only to remedies and procedure.  p. 477.
4. Evidence given on the preliminary hearing of one charged with violation of the Blue Sky Law is *held* sufficient to warrant a finding of probable cause to believe that the offense charged had been committed, though there was no proof that the securities sold were not exempted or excepted by statute, because while the state must prove all the essential facts entering into the description of the offense charged, when the negation of a fact lies peculiarly within the knowledge of the defendant it is incumbent on him to establish that fact.  p. 478.
5. The legislature may place on persons accused of violations of the Blue Sky Law the burden of proving that sales made by them are within the exemptions on which they rely.  p. 478.

6. *Habeas corpus* proceedings cannot take the place of a writ of error; and on such proceedings, after a preliminary hearing at which one charged with an offense was bound over for trial, the court should not weigh the evidence to determine whether it was sufficient to convict. p. 479.

7. The Blue Sky Law is not unconstitutional as denying the equal protection of the law by interfering with the right to labor and acquire property, or as a taking of property without due process of law. Nor are the classifications therein without legal basis, or so unreasonable and arbitrary as to make unjust and illegal discriminations. p. 482.

8. Under the broad police power of the state the question whether practices injurious to the public welfare exist is one for legislative determination. p. 482.

•9. The classification of persons, occupations, or industries, and selecting them for special regulation, is incidental to the legislative power to enact laws to prevent fraud or other abuses, though such classification must not be so unreasonable or arbitrary as to violate fundamental or personal rights. p. 482.

10. The police power of the state to impose reasonable regulations affecting transactions in intangible property—such as stocks and other securities—for the prevention of fraud and in promotion of the public health, safety, and the general welfare, is well settled. p. 484.

11. Though a law to be constitutional must apply equally to each member of a class, it need not be all-inclusive or extend to all cases which might be legitimately included in that class. p. 482.

12. The word "liberty," as used in the constitution, means freedom from all restraints except such as are justly imposed by law, and implies the right to make lawful contracts, but does not mean the unrestricted right to act according to one's own will in disregard of the rights of others; and the Blue Sky Law is not unconstitutional as a prohibition of a lawful business. p. 484.

13. The Blue Sky Law is *held* not unconstitutional because it delegates to the railroad commission legislative and judicial power. Nor is it invalid as granting unlimited discretion or arbitrary power to the commission in the matter of the granting or denial of permits for the sale of securities. p. 485.

14. The provisions of the Blue Sky Law relating to the qualifications and fitness of applicants for permits, though not so explicit as other provisions, do not confer arbitrary power on the railroad commission, in view of the difficulty of fixing a definite standard. p. 486.

15. The legislature has the power to ascertain the suitability of
    persons to engage in specified kinds of business, which power
    it may delegate to the railroad commission, which thereafter
    acts in such respect in a ministerial or executive capacity.
    p. 487.
16. The provision in sec. 183.33, Stats., for a judicial review of
    the decisions of the railroad commission is *held* to sufficiently
    satisfy constitutional requirements.   p. 489.
17. The fact that the Blue Sky Law goes further, in interfering
    with business transactions, than any prior statute, is not
    ground for judicial condemnation.   p. 489.

ERROR to review an order and a judgment of the circuit
court for Milwaukee county: OTTO H. BREIDENBACH, Cir-
cuit Judge.   *Affirmed.*

This is a writ of error to review an order and a judgment
quashing a writ of *habeas corpus* sued out by the plaintiff in
error. He was bound over for trial to the municipal court of
Milwaukee county upon four preliminary examinations held
at the same time upon four different complaints for viola-
tions of the statute known as the Blue Sky Law. The com-
plaints are substantially alike; all charge in separate counts
three different offenses—sale of stock without a permit, sale
of the same stock as a broker without a broker's permit, and
sale of the same stock as an agent without an agent's permit.
In one of the complaints it was alleged that on the 6th of
February, in the county of Milwaukee, the defendant unlaw-
fully and knowingly sold and negotiated a sale for value to
the complainant, naming her, of shares of stock in a Wis-
consin corporation, naming them; that no permit for such
sale had been issued by the railroad commission of Wiscon-
sin, or applied for, authorizing the sale under bond as pro-
vided in sub. (4) of sec. 183.27, Stats.; that the securities
were not sold as securities outstanding prior to August 1,
1919, under statement to said railroad commission as pro-
vided in sub. (5) of sec. 183.27, being contrary to sub. (1)
of sec. 183.27, Stats. 1923; and that on the same day the
defendant unlawfully acted as a broker in the sale of se-

curities, naming them, without having first applied for and secured from the railroad commission of Wisconsin a permit authorizing him to act as such broker, in violation of sub. (1), sec. 183.29, and that on the same day he unlawfully acted as an agent in the sale of securities, naming them, without having first applied for and secured from the railroad commission of Wisconsin a certificate authorizing him to act as such agent, in violation of the provisions of sub. (4), sec. 183.29, of the Statutes. The complaints closed in the usual form and are alike except that in some of them the offenses are charged to have been contrary to the Statutes of 1921 instead of 1923. It is conceded by counsel, however, that in all substantial respects, so far as this writ of error is concerned, the statutes are alike, except that the statute of 1923 contains two sections with respect to procedure, which will be later set forth. Since in both briefs counsel refer wholly to the Statutes of 1923, the references will be made for convenience to that statute.

The statute is very long and no attempt will be made to give the details of its provisions. The most that will be attempted will be a general summary, and for those details reference must be made to the statute itself. Sec. 183.25 consists of definitions of certain words used in the statute. Sec. 183.26 provides: "Except as hereinafter provided, the provisions of sections 183.25 to 183.44, inclusive, shall not apply to" certain classes of securities therein named. In very general terms these are as follows: (a) securities issued, which are guaranteed by the United States, any foreign government or any state or territory thereof, and by certain classes of municipalities, which are named; (b) commercial paper, if the entire issue matures not more than one year from the date thereof and bears a date not later than the day of sale; (c) securities of corporations operating railroads or public utilities, where the issue is regulated by the public service commission therein named, and equipment securities under specified conditions; (d) securities listed on the New

York, Boston, or Chicago stock exchanges pursuant to official authorization; (e) securities issued by banks, trust companies, building and loan associations, or land mortgage associations, whose business is subject to the control of the banking commission, and there are also exempted securities issued by national banks or other corporations existing by virtue of acts of Congress and the sale of securities to any such corporation; (f) securities of corporations organized under laws of this state without capital stock or exclusively for educational, fraternal, or similar purposes; (g) the sale of notes and bonds secured by mortgages on Wisconsin real estate where the total amount of the indebtedness does not exceed $15,000 nor sixty per cent. of the fair market value of the land and where the entire mortgage is sold with the notes or bonds; (h) notes or bonds of a specified class which are secured by a deposit with a bank or trust company of certain classes of securities on the conditions prescribed; (i) the distribution of stock dividends paid out of surplus to stockholders; (j) "the sale of any securities by the owner thereof for the owner's account, exclusively, such sale not being made in the course of continued or repeated transactions of a similar nature by the owner thereof and such owner not being the underwriter of such securities;" (k) judicial sales made by executors and other trustees named and sales by receivers and trustees in insolvency and bankruptcy; (l) sale by a pledge holder in good faith in the ordinary course of business; (m) sales legally made by a company of its stock for delinquent assessments; (n) securities of co-operative associations under secs. 185.01 to 185.22, inclusive; (o) sales by corporations of this state of stock of their own issue or their securities where the holders do not exceed twenty-five in number and the expenses in connection with such issue and commissions do not exceed two per cent. of the selling price; (p) the sale of an interest in any partnership, pool, or other company, not a corporation, where the total membership will not exceed

ten in number and the organization expenses do not exceed two per cent. of the invested capital; (q) an issue of securities by a company in the process of a *bona fide* reorganization under certain conditions. At the end of this sub. (q) there is a provision that if it shall appear to the commission that the sale of any issue of securities described in paragraphs (b), (g), (h), (j), (o), or (q) may be unfair or inequitable or work a fraud on the purchaser, it shall require the person issuing or selling the same to file a verified statement with the commission giving such information concerning the assets, liabilities, earnings, plan of business, contracts, organization, promotion expenses, articles of association, or other organization agreement, and any other facts relating to the security, person, or company issuing the same, as the commission may deem necessary to determine whether the securities may be sold; and the commission may make further investigation, requiring the expenses to be paid by the person issuing or selling the securities, and may issue an order temporarily prohibiting such sale; it is further provided that before any final order there may be a public hearing, if requested. If the commission determine that such securities or the methods of sale are unfair or inequitable or will work a fraud or that it is to evade the statute, the sale may be prohibited in this state or the terms of the sale may be fixed. If it appears to the commission that misrepresentations are being made or unfair or fraudulent practices are resorted to in the sale of the securities named in sub. (1), it may require persons selling the securities to file such information as it may deem necessary to determine those matters and may require the discontinuance of false representations or practices, and if the acts are deemed unlawful it may present the facts ascertained to the attorney general or the district attorney for action. By sub. (2) of sec. 183.26 all securities not mentioned or described in sub. (1) are divided into two classes as follows: (a) securities based upon es-

tablished value or income which shall be known as securities in class A. Class A securities comprise the following: notes or bonds issued by a person or company secured by a mortgage or deed of trust upon real estate or leasehold, where the total amount of securities with prior incumbrances does not exceed sixty per cent. of the fair market value of the lands and buildings. Provision is made for securities to be issued upon land and buildings to be erected, where the commission is satisfied that the total amount will not exceed sixty per cent. of the fair market value and where provisions are made satisfying the commission as to the financing and completion of the building and as to the net income from such securities. There are included in this class equipment trust certificates or notes or bonds to be issued by public-service corporations on the conditions specified; also serial bonds or notes on a vessel or vessels on the conditions named and securities issued by persons or companies owning a property, business, or industry which has been in continuous operation not less than two years and has earned the net profits therein specified. Provision is also made as to preferred and common stock which have paid dividends specified, and it is provided that under certain conditions affecting the soundness of the security or company the commission may, notwithstanding compliance with one or more of the standards of this subsection, refuse to classify such securities as class A and may classify them in class B or deny a permit for the sale thereof. (b) "Securities based on prospective income shall be known as securities in class B. All securities not included in subsection (1) or in paragraph (a) of subsection (2) of this section shall be known as securities in class B."

Sub. (1), sec. 183.27, states: "Except as provided in subsections (4) and (5) hereof no company, broker, or other person, directly or through an agent shall in this state sell, offer for sale, negotiate for the sale of, take subscriptions for, or exchange for property any security for the sale of

which a permit has not theretofore been issued, until there shall have been first applied for and secured from the commission a permit authorizing the sale of such security." In sub. (2) of sec. 183.27 it is provided that the application should be in writing, verified and filed, and state such facts as the commission may require, including names and addresses, amount of income, assets and liabilities, plan of transacting business, a copy of the security proposed, the contracts and advertising matter, an inventory with an appraisement verified, the amount and nature of the price to be paid for patent rights, good will, and promotion fees. Sub. (3) provides for the filing of the articles of partnership associations, trusts, and joint-stock companies. If the company, corporation, or association is organized under the law of any other jurisdiction, proof is to be made as required of authority to do business in such jurisdiction and that it has complied with sec. 226.02 of the Statutes. Sub. (4) provides that under certain conditions brokers authorized by the commission to act may sell class A securities before applying for or securing a permit. Among these conditions is one that a bond for $20,000 shall be given conditioned as specified. Sub. (5) provides that brokers authorized by the commission may sell securities issued prior to August 1, 1919, without a permit, and it also provides fully for a hearing by the commission, the information to be given, and if it appears that the plan is unfair and likely to work a fraud, that the prices of sale are excessive or the conduct of the applicant has been in violation of secs. 183.25 to 183.44, inclusive, of the Statutes, the sale of such securities may, on notice to the broker, be suspended by the commission.

Sec. 183.28 relates to proceedings and the granting of permits. It provides for the examination of the application, the papers filed, an investigation of the affairs of the person or company, the expense to be borne by the applicant. If it appears that the plan is not unlawful, unfair, or inequi-

table, that the business is to be honestly transacted, that the securities and methods to be used will not work a fraud, that the amount of the commissions are not unreasonable, that the proper fees have been paid, the permit shall be issued, otherwise denied.   There is a special clause with respect to insurance companies.

Every permit must recite in bold type that the issuance is permissive only; that there is no recommendation or responsibility on the part of any officer of the state.  The commission may impose any necessary condition as to the issuance and sale and establish reasonable regulations pursuant to the provisions of the statute.  It may make investigations and hold hearings to ascertain whether conditions have been complied with or fraud has been committed or whether there are grounds for refusing to grant a permit, and may amend, revoke, or temporarily suspend permits.  In order to carry out the provisions of the statute the commission may make investigations and hold public hearings upon reasonable notice, pursuant to the provisions of sec. 196.24 of the Statutes, and administer oaths, compel attendance of witnesses, the production of testimony, and it is made the duty of the circuit court or any judge thereof, on application of a commissioner, to take proceedings for contempt.  Provision is also made for the taking of depositions.

Sub. (1) (a), sec. 183.29, is as follows: "No person or company shall in this state sell or accept orders for purchase of securities issued by another unless he shall at the time of such sale or the acceptance of such order be a duly authorized broker."  In sub. (2) (b) there is an exception to this which will be stated so far as necessary and discussed in the opinion.  Persons desiring to act as brokers are required to file a verified application setting forth, in addition to such other information as may be required, names and addresses, "a statement of facts showing the previous business history of the applicant and of its managing officers and directors, if it be a corporation, or of its members

if it be a partnership, in such detail as may be required by
the commission, and also showing the general plan and
character of the: business of applicant." If the applicant
is a corporation órganized uńder another jurisdiction it
must furnish evidence that it is authorized to transact busi-
ness in this state; if it is not ·a corporation, provision is
made for the service of process. It is made the duty of the
commission to examine papers and documents filed, and if
deemed advisable to examine into the general business af-
fairs of the applicant, and if satisfied of the good business
reputation of the applicant and its officers and the general
business methods are fair and equitable, on the payment of
a fee a certificate shall be· issued authorizing him to act
as broker, otherwise it may refuse. The section provides for
the time of expiration of the certificate and· for procedure in
case of a change in the business. Provision is made for the
suspension or revocation of certificates in case of violation
of provisions of the act or when it is found that there have
been false statements or fraudulent transactions, and pro-
vision is made for notice to the broker and a hearing. It
is provided that no person shall act as agent until there has
been issued to him· a certificate authorizing him to act as
an agent of some broker or the issuer of the securities which
he is to sell. It is necessary to file a verified application
giving such information as may be required. If it appears
that his past business conduct has been fair and equitable,
on the payment of a :fee of one dollar the certificate shall
issue.

Sec. 183.30 provides that no person or company shall
issue, circulate, or publish any advertisement or make any
representation concerning securities in class B proposed to be
sold, until· a permit has been issued. Any such advertise-
ments are to be signed ·by the name of the person issuing
them and a copy is to be filed with the commission, and
they are not to· be issued after the commission has given
notice that any of the statements are false or likely to de-

ceive. Among other things it is provided that advertisements concerning class B securities shall include in bold-face type the words "Class B securities." Under certain conditions there must be included in bold-face type also, the words "This is a speculative venture," and such advertisements are to contain the clause, "Passed by the railroad commission of Wisconsin but without recommendation as to value."

Sec. 183.31 requires the companies and brokers authorized to sell securities to make reports to the commission as to the securities sold and such other information concerning the affairs of the broker as the commission may require. Provision is made for prohibiting the sale of securities after a permit has been issued, when certain changes in the organization or condition of the company have been made, and if the commission finds that the changes are such as would warrant a denial of an application it may revoke the permit.

Sec. 183.32 prohibits the sale of class B securities unless the contract of subscription or sale shall be in writing, with a copy delivered to the purchaser giving notice that the permit of the railroad commission is not a recommendation of the security, and under certain conditions there must be included in prominent type the words, "This is a speculative venture." It is further provided that the contract shall contain certain clauses as to the percentage of commission to be paid. These contracts are to be submitted to the commission for approval. This section also contains the following clause: "(3) All findings, decisions, orders and regulations of the commission shall be in force and shall be *prima facie* lawful and all rules and regulations prescribed by the commission shall be in force and shall be *prima facie* reasonable until finally found otherwise in an action brought for that purpose pursuant to the provisions of section 183.33." Sub. (4) of this section prohibits receiving any commissions unless the name and amount of the agent's interest appear in the contract and provides penalties for such omission.

Sec. 183.33 is as follows: "Every order, decision, permit or other official act of the commission shall be subject to review and any party aggrieved by any such order, decision, permit or official act may appeal therefrom to the circuit court of Dane county, in the manner and subject to the limitations prescribed by sections 195.32 to 195.34, inclusive, except that the provisions of subsections (4) and (5) of section 195.32 shall not apply to such appeal."

Sec. 183.34 provides that sales in violation of any provisions in secs. 183.25 to 183.44, inclusive, shall be voidable at the election of the purchaser, and provides for the remedies in such cases and limits the times for the commencement of actions.

Sec. 183.35 provides for the punishment when any company sells or offers for sale securities in violation of the statute. Sub. (2) prescribes the punishment where officers, agents, or employees of any company or any broker or any other person violate the provisions of the statute, and enumerates in detail acts declared to be a violation.

Sec. 183.36 provides for aid to be given by the attorney general or district attorney and for the prosecution of actions.

Sec. 183.37 relates to the service of process.

Sec. 183.38 relates to the fees to be paid.

Sec. 183.39 provides that original orders, certificates, and permits shall be retained in the office of the commission and that certified copies of orders, permits, and certain official reports and certificates should be *prima facie* evidence of facts stated. Sub. (4) and (5) are as follows:

"(4) In any prosecution or proceeding hereunder, the fact that a security or a transaction is exempt from the provisions of this act shall be matter of defense, and the burden of proof of any such exemption shall be upon the party claiming the benefit thereof.

"(5) All exemptions, exceptions and provisos in sections 183.26 to 183.44, inclusive, shall be matters of defense,

and it shall not be necessary for the state, in any prosecution under sections 183.26 to 183.44, inclusive, to plead or prove that the defendant or the transaction complained of is not within any of such exemptions, exceptions or provisos."

Sec. 183.40 contains an exception with respect to obtaining subscriptions for corporate stock prior to incorporation.

Sec. 183.41 provides for annual reports by the commission to the governor.

Sec. 183.42 provides that the commission may from time to time publish information regarding offerings it considers fraudulent.

Sec. 183.43 prohibits representations that any securities of any company subject to the act have been approved or indorsed by the railroad commission of Wisconsin.

Sec. 183.44 provides that neither the act nor any provision of the act shall be construed as a regulation of commerce, with the exception named.

Sec. 183.45 relates to the validation of certain stock issues.

This résumé of the statute is necessarily very incomplete as to details and is given only to show its general scope and the substance of the principal provisions.

*Joseph G. Hirschberg* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, *George A. Skogmo,* special assistant district attorney, and *C. Stanley Perry,* assistant district attorney; and the cause was argued orally by *Mr. Skogmo.*

JONES, J.   The first assignment of error is that the complaints state no offense.   It is argued that the defendant was not apprised of the charges brought against him and therefore could not know the nature of the offenses attempted to be stated.   It is contended that the statute is

long and prolix, containing many exceptions which are not set forth in the complaints, and that the defendant was compelled to speculate as to what classes of securities he was accused of selling without a permit. Under sec. 183.27 he was charged with having sold securities without a permit. Although this section is broad enough in its terms, it contains two exceptions, one permitting sales by the authorized broker before obtaining a permit provided he complies with certain conditions, including giving a bond; the other authorizes such brokers to make sales of securities issued prior to August 1, 1919, and which have been in the hands of the public since that date, on complying with the provisions named in the section. The complaints expressly stated that the securities sold by the defendant did not come within either of these exceptions. The complaints also charged that the defendant had violated sub. (1), sec. 183.29, Stats., in selling securities without being authorized as a broker, and that he violated sub. (4), sec. 183.29, in selling the securities without being authorized as an agent.

It is plain that the defendant was not charged of any offense under sec. 183.26, because by express language the statute was made inapplicable to the numerous classes of securities included in that section. It is argued that the classes called "A" and "B" contain several exceptions or qualifications besides the two already mentioned and that the complaints should have stated that the sales were not within these exceptions; since the two exceptions referred to permit sales without permits and are negative in the complaint, they stand on a different footing from the others. The qualifications embraced in class "A" are in a different section from any of those under which the offenses are charged. The complaint charging the defendant as acting as agent without a certificate under sub. (4), sec. 183.29, is found in a separate paragraph or subsection and has no qualification or exception. The charge that the defendant sold securities without being authorized as a broker is under sub. (1) (a), sec.

183.29. In sub. (b) there is a qualification to the effect that the statute does not apply in case there was an agreement that no compensation should be received nor as to sales by one as an agent who at the time of the sale was a duly authorized agent for the sale of such securities. In paragraph (e) it is provided that in any prosecution for violation of the provisions of the statute the fact that any transaction is exempt by reason of the exceptions in (b) shall be matter of defense and the burden of proving the exemption is placed upon the defendant. Moreover, there is the general provision already quoted in sub. (5), sec. 183.39, to the effect that the exceptions and provisos in the statute need not be pleaded. It was the common-law rule that where an exception or qualification is in a separate section of the statute or in a proviso which is distinct from the enacting clause, it is a matter of defense which the prosecution need not anticipate in the pleadings. *Byrne v. State,* 12 Wis. 519; *Raynor v. State,* 62 Wis. 289, 22 N. W. 430; *Splinter v. State,* 140 Wis. 567, 123 N. W. 97; *Piper v. State,* 163 Wis. 604, 158 N. W. 319. In the absence of constitutional restrictions, it is within the legislative power to prescribe the requirements of pleadings in criminal as well as civil cases. It is by legislative authority that complaints and informations in capital offenses, as in homicides, may be stated in a few lines instead of many pages according to the procedure at common law. The fact that sub. (4) and (5), sec. 183.39, were enacted after the offenses are alleged to have been committed does not prevent their application, since they relate only to remedies and procedure.

The further argument is made that the offenses charged were not proven by any competent evidence. The principal objection now made is that the state did not prove that the sales were those of securities not exempted or excepted by the statute. We shall not enter on any elaborate discussion of the large amount of evidence received in the several cases.

There was competent testimony in all the cases that the accused had sold the securities named in the complaints and that he had no permit for such sales.   There was also evidence bearing on the question whether the sales were within the exempted classes.   It is undoubtedly the general rule that the state must prove all the essential facts entering into the description of the offense.   But it has been held in many cases that when a negation of a fact lies peculiarly within the knowledge of the defendant it is incumbent on him to establish that fact.   In a leading case decided more than one hundred years ago, where the defendant was accused of unlawfully having game in his possession, Lord ELLEN-BOROUGH said:

"There are, I think, about ten different heads of qualification enumerated in the statute, to which proof may be applied; and according to the argument of today every person who lays an information of this sort is bound to give satisfactory evidence before the magistrates to negative the defendant's qualification upon each of those several heads. The argument really comes to this: that there would be a moral impossibility of ever convicting upon such an information. . . . And does not, then, common sense show that the burden of proof ought to be cast upon the person who by establishing any one of the qualifications will be well defended?   Is not the statute of Anne in effect a prohibition on every person to kill game unless he brings himself within some one of the qualifications allowed by law, the proof of which is easy on the one side, but almost impossible on the other?"   *The King v. Turner,* 5 Maule & S. 206.   Also see cases in note 36 L. R. A. N. s. 98.

In this state and in most states there are statutes declaring what shall be *prima facie* evidence of particular facts in certain classes of criminal offenses and statutes placing on the accused the burden of proof as to some particulars. We have no doubt as to the authority of the legislature to place upon defendants accused of offenses under this statute the burden of proving that sales made by them come within the exemptions on which they rely.   *Raynor v. State,*

62 Wis. 289, 22 N. W. 430; 1 L. R. A. N. S. 626.  Doubt-
less statutes of this character might proceed so far as to
invade constitutional rights; for example, if they should
operate to deprive the accused of due process of law or un-
dertake to make evidence of certain facts conclusive proof
of guilt.  But under the statute now under consideration
accused persons have the full opportunity to present any
facts relevant to the issue.

   This proceeding in *habeas corpus* cannot take the place
of a writ of error.  It is not for us now to determine whether
there was sufficient evidence at the preliminary hearing to
convict the defendant, if it had been a trial instead of a
preliminary examination.  There has been much conflict of
opinion in other states as to what extent the reviewing court
should examine or weigh the evidence in a proceeding of
this character.  12 Ruling Case Law, 1242.  The rule, how-
ever, is well settled in this state.  In a very elaborate opinion
by Mr. Justice MARSHALL it was said:

   "The reviewing court, in the exercise of its function,
must necessarily pass upon and reverse or affirm the decision
of the committing magistrate, if such matters are prop-
erly presented for its consideration, according to its de-
termination thereof, and in doing so it does not go beyond
jurisdictional defects.  It can examine the evidence only
sufficiently to discover whether there was any substantial
ground for the exercise of judgment by the committing
magistrate.  It cannot go beyond that and weigh the evi-
dence. . . . When it has discovered that there was com-
petent evidence for the judicial mind of the examining
magistrate to act upon in determining the existence of the
essential facts, it has reached the limit of its jurisdiction
on that point.  If the examining magistrate acts without
evidence, he exceeds his jurisdiction; but any act, upon evi-
dence worthy of consideration in any aspect, is as well within
his jurisdiction when he decides wrong as when he decides
right."  *State ex rel. Durner v. Huegin,* 110 Wis. 189 (85
N. W. 1046); at p. 237; *Arnold v. Schmidt,* 155 Wis. 55,
143 N. W. 1055.

Under this rule, after examining the evidence we have
come to the conclusion that the decision of the trial court,
that there was sufficient evidence of probable cause to believe
that the offenses charged had been committed, should be
sustained.

Thus far we have followed the order of discussion adopted
in the brief of plaintiff's counsel treating the statute as a
valid enactment. It is ably argued, however, that the statute
is unconstitutional and void, that it denies the equal protec-
tion of the law, and by interfering with the right to labor and
acquire property results in the taking of property without
due process of law; that it leaves the traffic in certain securi-
ties untrammeled and then provides as to all others that the
dealing must be by the permission of a state tribunal, the
railroad commission. It is contended that there is no legal
basis for the classifications made by the statute; that they
are unreasonable and arbitrary and make unjust and illegal
discriminations. It is argued that there is no good reason
for setting apart from other securities the classes enumerated
in sec. 183.26 to which the provisions of the statute do not
apply, and the provisions in sub. (a) to (q) are criticised
in detail. As illustrations of the arguments used it is argued
that the experience of recent years has shown that bonds of
foreign governments are liable to depreciate until they have
but little or no value; that the stocks and bonds of great
railroad companies have often so diminished in value as to
cause vast losses to investors; that fortunes are often sunk
by reason of investments in securities listed on the stock
exchanges named in the statute. The frequency of bank
failures is pointed out and the losses incurred by those deal-
ing in securities named in sub. (e) are dwelt upon. So long
as investors are fallible in their judgments or too credulous,
such losses as have been mentioned will be incurred. During
rapidly changing conditions in domestic or world-wide af-
fairs, the most conservative and experienced financiers have
often found their securities, supposed to be gilt-edged, a drug

on the market.  It is axiomatic that it is as hard to keep a
fortune as to make it.  The statute is not to be construed as
classifying any of the securities enumerated as safe or any
others as unsafe.

It was doubtless, however, the legislative thought that
there were differences in degree as to their safety and that
as a rule some were, from their nature or the conditions of
their issue, more hazardous than others.  Almost univer-
sally the bonds and treasury notes of the United States gov-
ernment and securities issued by municipalities are regarded
as of higher grade than most other obligations.  Bonds of
foreign governments are not widely bought by the average
man or woman, and their market prices may be found in the
public prints.  Securities listed on the stock exchanges speci-
fied in the statute are distinguished in several respects from
others.  They are not admitted to be listed until their legiti-
macy and character have been passed upon and approved by
the authorities of the exchange.  They are dealt in very ex-
tensively by the business world.  Their market values are
daily printed in the public press throughout the land and are
thus open for discovery by any person who may be interested.
Banks and trust companies are under the strict supervision
and to a considerable extent the control of the banking com-
missioners, whose duty it is to carefully examine the nature
of the securities in which these corporations deal and to take
prompt action in case of probable danger to the public inter-
ests.  Railroad companies and other public utilities are also
subject to regulation and supervision by sworn state officials,
who are required to keep informed as to the methods of their
business, to fix rates and make valuations of such property
and determine the amount of stocks and bonds which may
be issued.

It seems unnecessary to discuss separately other exemp-
tions named in sec. 183.26, such as securities issued for edu-
cational and similar purposes, notes for limited amounts
secured by mortgages, notes and bonds to be secured by

deposits in banks of securities of the character and amount named, distribution of stock dividends declared out of surplus, sales by the owner on his own account, not in the course of repeated transactions, judicial sales, sales by pledge holders, sales for delinquent assessments, sales by co-operative associations, sales by corporations of their own stock when the number of stockholders is very limited, sales of interests in partnerships, and sales by a company to its creditors or security holders during the process of reorganization. Differences might be pointed out which show an essential distinction between these classes of securities and the great mass of securities included in classes "A" and "B." Nor can it be questioned that there is a wide distinction between securities in classes "A" and "B." One class is based on established values or income and the other on prospective income. The statute was enacted to remedy certain evils which the legislature believed existed. Under the broad police power, the question whether practices injurious to the public welfare do exist is one for legislative determination.

Incidental to the legislative power to enact laws to prevent fraud and other abuses is that of making classifications of persons, occupations, or industries and selecting them for special regulation. The classification must be based "on substantial distinctions which make real differences; it must be germane to the purposes of the law; it must not be limited to existing conditions only; and must apply equally to each member of the class." *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209. The classification must not be so unreasonable or arbitrary as to violate fundamental rights of persons or property. But within these limitations the legislative power is very broad indeed. It may be a classification which the business world and economists do not approve as politic or wise. Hence it may be unscientific or illogical. Although it should apply equally to each member of a class, it need not be all-inclusive or extend to all cases which it might legitimately include. In the language of Mr. Justice

HOLMES, "it is established by repeated decisions that a statute aimed at what is deemed an evil, and hitting it presumably where experience shows it to be most felt, is not to be upset by thinking up and enumerating other instances to which it might have been applied equally well, so far as the court can see. That is for the legislature to judge unless the case is very clear." *Keokee C. C. Co. v. Taylor,* 234 U. S. 224, 34 Sup. Ct. 856. It follows that the classification does not necessarily call for condemnation by the courts although there may be wide differences of opinion as to its wisdom or propriety. It seems very plain that the temptation and the opportunity to commit fraud in dealing in securities in the exempted class and in class "A" are far less than in those included in class "B." If it were the avowed and only purpose of the statute, in making these classifications, to prevent losses in business affairs, a different question would arise, since men have the same legal right to be foolish in their investments as to be wise. But it is the object of the act to prevent fraud and deception. This is just as plain as if that purpose were many times repeated in the statute in bold-face type. There may well be differences of opinion whether some classes should have been included in the stat-ute and some omitted, but within the limitations already stated this was a question for the legislature and not for the courts. In several of the so-called Blue Sky cases classi-fications of the same general character, though differing somewhat in detail, have been upheld. *Merrick v. N. W. Halsey & Co.* 242 U. S. 568, 37 Sup. Ct. 227; *Hall v. Geiger-Jones Co.* 242 U. S. 539, 37 Sup. Ct. 217; *Caldwell v. Sioux Falls S. Y. Co.* 242 U. S. 559, 37 Sup. Ct. 224; *Stewart v. Brady,* 300 Ill. 425, 133 N. E. 310. In numerous decisions in this state the general rules on which such classi-fications as are made in this statute may be sustained have been declared. *State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209; *Peterson v. Widule,* 157 Wis. 641, 147 N. W. 966; *Trading*

*Stamp Cases,* 166 Wis. 613, 166 N. W. 54; *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125.

It is argued that in many respects the statute amounts to a prohibition of lawful business. We do not so construe it. On the contrary, it is a statute designed to regulate dealings in intangible property; to regulate transactions in a kind of business in which there are more opportunities for the perpetration of fraud than in a trade relating to material products. The police power of the legislature to impose reasonable regulations affecting dealings in such products, for the prevention of fraud and in promotion of public health, safety, and the general welfare, is too well settled to call for discussion. *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 123 N. W. 785; *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42; *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 189 N. W. 564; *Hutchinson I. C. Co. v. Iowa,* 242 U. S. 153, 37 Sup. Ct. 28. There seems to be equally good reason for the exercise of this power in regulating transactions in intangible properties. Although the word "liberty" as used in the constitution implies the right to make lawful contracts, it does not mean the unrestricted right to act according to one's own will, in disregard of the rights of others. It means freedom from all restraints except such as are justly imposed by law. The statutes in this state and other states which impose restraint upon modes of doing business and the making of contracts are infinite in number and too numerous to call for any attempt at enumeration. In forty states or more statutes have been passed differing in detail from the one now under consideration, but all designed to regulate the sale of certain classes of securities. This shows a wide recognition of existing evils of the kind which this statute seeks to prevent. The law reports of this country abound in cases where victims have been defrauded by the misrepresentations of unscrupulous agents in sales of mining stocks, oil stocks, rubber stocks, and others not so plainly speculative in their nature. Often the bonds issued,

based on such properties, have been found nearly or quite as worthless as the stocks. By this statute the legislature determined that regulation as to dealings in the classes of securities described was necessary, and that determination is conclusive.

But it is argued that the legislature exceeded its powers in prescribing the modes of such regulation and that the statute attempts to confer upon the commission an unwarranted delegation of legislative and judicial power. For this proposition counsel for the petitioner relies greatly on a former decision of this court. *Klein v. Barry,* 182 Wis. 255, 196 N. W. 457. In this case there was no decision as to the validity of the statute as a whole, but the ruling was based on sec. 1753—57 as amended by ch. 442 of the Laws of 1921, which has since been repealed. By that section sales made in violation of the statute were made voidable at *the discretion of the commission;* after investigation in certain contingencies the commission was authorized to make an award directing the parties to make payments of such amounts and to do such things as might be necessary to place the parties in the same situation they would have been in had the statute been complied with; and the commission was authorized, on the conditions named, to declare the security voidable at the election of the purchaser or "make such other award as may be just and equitable under the premises." Among other reasons it was held that the section was void because it gave the commission an uncontrollable discretion to determine whether securities were void or voidable and attempted to confer upon it powers of a court of equity. It is very plain that the present statute undertakes to confer no such broad or unlimited power upon the commission. The statute itself now prescribes the conditions on which transactions in violation of it shall be voidable and leaves to the courts the determination of the remedies to be applied. The statute prescribes the classifications of securities and the procedure by means of which the com-

mission may determine certain facts, which are also definitely pointed out. In short, the commission is made a fact-finding body on the same theory that has been approved in the numerous decisions of this court and other jurisdictions. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209.

Especial and earnest objection is made to those sections of the statute which provide for the granting or denial of permits for the sales of securities, and it is urged that the statute gives unlimited discretion and arbitrary power to the commission and erects no standard for its conduct. If this objection is well founded the statute cannot stand the test. As already stated, the prime object of the statute is to prevent fraud and deception in the negotiation of securities. In determining whether fraud has been or is likely to be committed, the two main subjects for the consideration of the commission are the character of the securities and the character and reputation of the persons dealing in them. The classifications afford some guide and basis for the commission. The elaborate provisions as to the information to be furnished concerning assets, liabilities, inventories, appraisements, the plan of organization, advertising, and the like are all well adapted to aid the commission in coming to a reasonable conclusion as to the character of the securities. In view of the explicit directions given in the statute for ascertaining the quality and safety of securities, it cannot be justly said that there is no guide or standard in this respect.

The statutory directions for ascertaining the qualifications and fitness of the applicants for permits are not so explicit, and the argument is made that there is no standard for their selection and that in this respect the statute attempted to confer arbitrary power on the commission. The applicant is required to furnish a written statement showing his previous business history and such other facts as may be required. The commission, if it is deemed advisable, may

make a detailed examination of his business and conduct, and if satisfied as to his good business reputation and conduct it is required to issue the permit. It cannot be doubted that the legislature has the power to determine the qualifications of persons engaging in a business which from its nature affords opportunities for defrauding the public. In this statute it has declared what these qualifications shall be. The legislature might have added language prescribing in great detail the qualifications of applicants for permits and the mode of ascertaining those qualifications, but it is a question whether such details would not have tended to confuse rather than enlighten.

In a discussion of the same subject it was said in an opinion by Mr. Justice McKenna:

"It is certainly apparent that if the conditions are within the power of the state to impose, they can only be ascertained by an executive officer. Reputation and character are quite tangible attributes, but there can be no legislative definition of them that can automatically attach to or identify individuals possessing them, and necessarily the aid of some executive agency must be invoked. The contention of appellees would take from government one of its most essential instrumentalities, of which the various national and state commissions are instances." *Hall v. Geiger-Jones Co.* 242 U. S. 539, 37 Sup. Ct. 217.

This court has in several cases sustained statutes which imposed on officials the duty of determining the suitability of persons to engage in specified kinds of business without prescribing any more definite standards than are laid down in the present act. *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42; *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125. The legislature itself would have the power to ascertain such facts as under this statute are left to the commission, but from the nature of things such ascertainment would be impracticable if not impossible. Having this power, it may be delegated to administrative tribunals. The authority thus given is not legislative in its nature, but is the exercise

of ministerial and executive duties under legislative sanction. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *State ex rel. Buell v. Frear,* 146 Wis. 291, 131 N. W. 832; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209; *State v. Lange C. Co.* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57. This statute is based on the same foundation as the numerous other state and federal statutes creating commissions for various purposes. The legislature lays down certain rules by statute declaring certain rights and duties under the conditions named and leaves it to an administrative tribunal to ascertain the necessary facts and apply the law as directed. As has often been said, such commissions have come to play an important part in our form of government. On occasions the commission system is severely criticised, but the number of commissions does not diminish, partly by reason of the increasing complications in business affairs, and partly because it is impossible for legislative bodies to ascertain the facts necessary for the administration of the laws and to which the laws are applied. Necessarily rather broad powers are conferred on commissions of this kind, but it is not to be presumed that persons of high official rank will exercise those powers in a partial or unfair manner, or in such a way as to hamper legitimate business.

In the Blue Sky cases already cited the courts considered the questions of classification, delegation of power, and the question whether the statute prescribed any sufficient standard for the action of the commission. None of the statutes were in all respects the same as our own, but they were all quite similar and depended on the same general principles. In some of the decisions the subject of the requisite standards was but little discussed, but the point was raised in the briefs and was involved in the questions to be decided. The constitutionality of the statute was upheld in each case. As suggested in the brief of counsel for the petitioner, in several of these decisions it is stated that there is provision in

the statutes in question for judicial review, and therefore it is claimed that those cases are not authority for the ruling of the trial court in this case.  Sec. 183.33, already quoted, makes the decisions of the commission subject to review by the circuit court for Dane county in the same manner that other decisions and orders of the railroad commission are reviewable, except that in the latter case, under the conditions named, a copy of the evidence taken may be transmitted to the commission for reconsideration by it.  This difference in the two statutes does not seem to affect materially the question whether parties desiring it may have a judicial review.  By the terms of the statute which controls, if the orders or decisions of the commission are unlawful or unreasonable they may be set aside.  On general principles, if the commission acts without jurisdiction, or without evidence when evidence is required, or upon erroneous views of the law, its decisions are not binding on the courts.  The decisions of this court have settled the rule in this state that such a review as is granted by the statute satisfies the constitutional requirements. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209.  It is proper to add that there are many boards created by the statutes of this state whose decisions honestly made and within their jurisdiction are not subject to review in any proceeding. *Borgnis v. Falk Co.* 147 Wis. 327, 359, and cases cited (133 N. W. 209).  We conclude that this case is not distinguishable from the Blue Sky cases already cited and that the statute authorizes such judicial review as meets constitutional requirements.

There is much criticism in the brief of counsel for the petitioner of the policy of this statute.  Of course this is a legislative and not a judicial question.  It is claimed that the statute goes further in interfering with business transactions than any statute which has hitherto had the approval of this court.  Even if this were true it does not necessarily

subject the enactment to judicial condemnation. Every' legislative attempt to remedy social evils or abuses in the business world is liable to be confronted by this argument. If novelty had been the test for determining the validity or invalidity of statutes, many of the state and federal statutes creating commissions which have been upheld by the courts, as well as innumerable other enactments for the betterment of social and business conditions, would have fallen under the ban. With due regard to constitutional limitations, every step taken by the legislature must be judged by its own merits. It is our conclusion that the order of the circuit court should be sustained.

*By the Court.*—The order of the trial court quashing the writ of *habeas corpus* and remanding the defendant to the custody of the sheriff is affirmed.