BAKER, Appellant, vs. TAX COMMISSION and another, Respondents.

*January 12—February 7, 1933.*

560

For the appellant there was a brief by *Norman L. Baker* and *Normal J. Baker,* both of Milwaukee, and oral argument by *Norman L. Baker.*

For the respondents there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, *William A. Zabel,* district attorney, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry* and *Mr. Seibold.*

ROSENBERRY, C. J.   After the appeal to the circuit court for Milwaukee county had been taken, the plaintiff procured an order to show cause, returnable upon the day set for trial, why he should not be granted a full and complete trial both as to questions of law and fact, his motion in that regard being supported by affidavits which tended to show, in the opinion of the plaintiff, that he could not have a fair trial unless permitted at the trial to correct the record and supply omissions therein.   The court denied the motion because of the provision contained in sec. 71.16 (8), which is that "an appeal [from the Tax Commission to the court] may thereupon be brought on for hearing by either party upon the record made before the Tax Commission or the county board of review and not otherwise." . . .

The plaintiff contends that by the constitution he is entitled to a new trial and that the refusal of the court to take testimony to correct the record and supply omissions deprives him of a trial guaranteed to him by the constitution of the state of Wisconsin, deprives him of his property without due process of the law, and denies him the equal protection of the laws in violation of sec. 1, art. XIV, of the amendments to the constitution of the United States, and cites *Ohio Valley Water Co. v. Ben Avon Borough,* 253 U. S. 287, 40 Sup. Ct. 527, and other cases in support of his position.

In *Crowell v. Benson,* 285 U. S. 22, 52 Sup. Ct. 285, 76 Lawy. Ed. 598, the supreme court of the United States reviewed the cases and held that the federal courts could not be concluded by findings of administrative bodies with respect to "jurisdictional facts;" that is, where it is alleged that a

citizen has been deprived of his property without due process of law, the court will determine for itself the facts in respect thereto. Where the relation of master and servant is a condition of jurisdiction of the administrative tribunal, as to that fact the court will not be concluded by the finding of an administrative body. Other illustrations appear in the opinion referred to. See *Kreutzer v. Westfahl*, 187 Wis. 463, 485, 204 N. W. 595.

No such situation is presented by the facts in this case. There can be no doubt about the jurisdiction of the assessor of incomes, of the income tax board of review, or of the Tax Commission. The statute requires the record to be made, and provides that when made an appeal to the circuit court shall be had upon the record. This preserves to the taxpayer the right to have the determination reviewed, but requires him to complete the record made when the matter is before the administrative body. The jurisdiction appears here, no jurisdictional fact was required to be found, the facts which were sought to be established upon the trial in circuit court were facts relating to the transactions involved which were under consideration by the various administrative officials and were in no sense jurisdictional. For cases holding such findings may be made conclusive, see cases cited in dissenting opinion of Mr. Justice BRANDEIS in *Crowell v. Benson*, 285 U. S. 22, at p. 69, 52 Sup. Ct. 285, 76 Lawy. Ed. p. 623, note 4.

It is conceded that unless the item of $5,563.31 constitutes a dividend derived from stock, it is not a deductible item on the 1928 return of the taxpayer. Sec. 71.04 (4). The character of the funds advanced by the plaintiff and other stockholders under the arrangement was at best equivocal and uncertain. Apparently no one knew and no one attempted to determine until about the time of the issue of the preferred stock, exactly what the legal status of the fund should be. Any arrangement under which a fund may be returned

to the contributing stockholder is an advance even though as to creditors it is to be considered as a contribution to capital. It remains an advance until some definite step is taken which changes its character. If the corporation had suddenly become tremendously successful, there seems to be nothing in the arrangement which would have prevented the Waukesha group from asserting its rights at any time when its members were prepared to contribute their proportion of the advance. Had they done so the plaintiff's right to stock would have been reduced to his original one-third. When the money was paid in, it was one thing or the other. It could not be at once payment on stock and an advance. The stockholders could agree that it should be considered capital as to creditors. That agreement did not create shares nor fix the value of shares already created. The shares had no par value. All stockholders including Opitz were to have a share of stock for one dollar. All except Opitz were to make the advances as a condition of receiving stock. This advance was to be returned before any other return was to be made to the stockholders. Returns paid on this advance were interest on the advance, not dividends on stock.

When in July, 1929, preferred stock was issued which represented the amount of these advances, the transaction did not relate back to the time of the contribution and characterize the fund as capital stock from the time it was advanced to the time of the issuance of the stock. The issuance of the capital stock in 1929 finally and for the first time changed the character of the fund from an advance to a payment for preferred capital stock. No provision seems to have been made in the original articles for the issuance of preferred stock. So long as the funds contributed by the plaintiff remained advances, whatever was paid by the corporation for the use of such funds was interest no matter how it might have been designated on the books of the company or treated by the company. The resolution of May 17, 1926, authoriz-

564

ing payment, directed payment "to those who had contributed capital to the company equal to interest at six per cent. per annum on the amounts contributed." The stockholders did regard it as a dividend on stock. It would have required no reduction in the capital stock of the company at any time prior to July, 1929, to have retired these advances nor would it have resulted in any change in the capital structure of the company.

We conclude, therefore, that during the interim and before the issuance of stock for the advances was determined upon, the amounts paid for the use of funds advanced or contributed were interest and were correctly assessed as such.

*By the Court.*—Judgment affirmed.